# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Kurt M. Ray,**
**Petitioner Below, Petitioner**

vs) **No. 16-0022** (Brooke County 13-C-75)

**Karen Pszczolkowski, Warden,**
**Northern Regional Correctional Facility,**
**Respondent Below, Respondent**

**FILED**

**February 17, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Kurt M. Ray, pro se, appeals the December 7, 2015, order of the Circuit Court of Brooke County denying his amended petition for a writ of habeas corpus. Respondent Karen Pszczolkowski, Warden, Northern Regional Correctional Facility, by counsel Julie A. Warren, filed a response.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On March 3, 2008, petitioner was indicted on the following offenses: burglary, wanton endangerment, assault during the commission of a felony, sexual assault in the first degree, sexual assault in the second degree, kidnaping, and threats to kidnap. The charges stemmed from an occurrence during the night of January 11, 2008, when petitioner entered the home of his former girlfriend and forced her to leave with him. When the police later encountered the two, the victim was wearing nothing but a flannel jacket. She screamed for help, and the police arrested petitioner without incident. The police transported the victim to a hospital to receive treatment for her injuries.

On March 18, 2009, the circuit court held a hearing at which the parties presented a plea agreement. Petitioner agreed to plead guilty to burglary, wanton endangerment, and assault during the commission of a felony, kidnaping, and threats to kidnap. In exchange, the State agreed to dismiss the counts charging sexual assault in the first degree and sexual assault in the second

1

degree. The parties further agreed that sentencing would be at the circuit court's discretion and that the State would be permitted to argue that the court should impose an aggregate sentence under which petitioner would not be eligible for parole for thirty years. The circuit court found that petitioner understood both the terms of the plea agreement and his constitutional rights and that he voluntarily entered his guilty pleas. The circuit court accepted petitioner's pleas and convicted him of the counts to which he pled guilty.

On April 24, 2009, the circuit court held petitioner's sentencing hearing. Petitioner's father, cousin, and friend made statements indicating that petitioner's crimes were not consistent with his normal character. Petitioner's attorney stated that other individuals came to support petitioner at sentencing and submitted letters on his behalf, but that those individuals did not desire to make oral statements. The State presented the statements of the victim and of the nurse who treated the victim at the hospital. Prior to the nurse's statement, petitioner's attorney objected to the State's questioning of the nurse. The circuit court ruled that neither party could question the nurse, but that she could give a statement like every other witness at the sentencing hearing. The nurse gave a statement detailing the victim's injuries on the night of January 11, 2008.

Following the witness statements, the circuit court imposed sentences of one to fifteen years of incarceration for burglary;[1] five years of incarceration for wanton endangerment; two to ten years of incarceration for assault during the commission of a felony; a life term of incarceration for kidnaping with the possibility for parole after ten years;[2] and twenty years of incarceration for threats to kidnap. With regard to petitioner's conviction for threats to kidnap, for which West Virginia Code § 61-2-14c sets no maximum sentence, the State previously recommended that the circuit court impose a term of sixty-four years of incarceration. Therefore, in sentencing petitioner to twenty years of incarceration for threats to kidnap, the circuit court rejected the State's sentencing recommendation with regard to that conviction. The circuit court ordered that petitioner serve his sentences consecutively. Petitioner filed a direct appeal on December 8, 2009, alleging that his sentence for threats to kidnap was unconstitutionally disproportionate to the character of the offense. By order entered March 4, 2010, this Court refused petitioner's appeal.

Petitioner filed a petition for a writ of habeas corpus on June 3, 2013. The circuit court subsequently appointed habeas counsel for petitioner and directed the filing of an amended habeas petition. Petitioner's habeas attorney filed the amended petition on November 18, 2013, alleging the following grounds for relief: (1) incompetency at the time of petitioner's plea hearing due to drug and alcohol abuse; (2) coerced and involuntarily entered guilty pleas; (3) excessive sentence and a sentence more severe than expected; (4) violation of double jeopardy with regard to

---

[1]Based on an error in the presentence report, the circuit court initially sentenced petitioner to a term of one to ten years of incarceration for burglary. However, after counsel for both parties alerted the circuit court of the error, the court imposed a sentence of one to fifteen years of incarceration, as required. *See* W.Va. Code § 61-3-11(a).

[2]West Virginia Code § 62-12-13(c) provides that, generally, "[a]n inmate sentenced for life may not be paroled until he or she has served ten years."

petitioner's convictions for kidnaping and threats to kidnap; (5) denial of petitioner's right to confront the victim's nurse at his sentencing hearing; and (6) ineffective assistance of trial counsel, including that his attorney mistakenly advised him regarding the possibilities of probation and parole. In alleging ineffective assistance, petitioner asserted that his trial attorney (a) failed to raise the issue of his intoxication on the night of his offenses; (b) pressured petitioner into accepting the parties' plea agreement; (c) failed to raise petitioner's depression and the fact the he was on medication for his depression; (d) failed to correct errors in the presentence report; and (e) failed to present all of petitioner's witnesses at his sentencing hearing.

With his amended habeas petition, petitioner filed a *Losh* checklist of grounds waived.[3] Respondent filed a response on October 8, 2015. Following the filing of petitioner's amended petition and respondent's response, the circuit court determined that the record was sufficient for it to adjudicate the claims raised by petitioner and canceled the habeas hearing previously scheduled for November 16, 2015. On December 7, 2015, the circuit court entered a twenty-six page order denying petitioner's amended habeas petition after refuting all of his grounds of relief, including the sub-grounds petitioner raised as part of his ineffective assistance claim.

Petitioner now appeals the circuit court's December 7, 2015, order denying his amended habeas petition. We apply the following standard of review in habeas appeals:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006). A court having jurisdiction over habeas corpus proceedings may deny a petition for a writ of habeas corpus without a hearing "if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief." Syl. Pt. 1, *Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (1973).

On appeal, petitioner challenges the circuit court's finding that the record was sufficient for it to adjudicate the claims raised by petitioner without the necessity of an evidentiary hearing. Respondent counters that the circuit court correctly found that the record allowed it to summarily deny petitioner's amended habeas petition. We agree with respondent and note that the circuit court found that it could deny the amended petition after reviewing "the court files [and] the transcripts." We have reviewed the plea and sentencing transcripts, petitioner's indictment and the parties' plea agreement in his criminal case, his amended habeas petition filed in the instant case, and other documents included by petitioner in his appendix. Based on our review of the record, we

---

[3]*See Losh v. McKenzie*, 166 W.Va. 762, 768-70, 277 S.E.2d 606, 611-12 (1981).

conclude that the circuit court did not err in finding that the record was sufficient for it to adjudicate petitioner's habeas claims without a hearing.

Having reviewed the circuit court's December 7, 2015, "Order Denying Petitioner's Amended Petition For [Post-]Conviction Habeas Corpus Relief," we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions as to the issues raised by petitioner in this appeal.[4] The Clerk is directed to attach a copy of the circuit court's order to this memorandum decision. We conclude that the circuit court did not abuse its discretion in denying petitioner's amended petition for a writ of habeas corpus.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED**:   February 17, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

---

[4]To the extent that petitioner raises issues not presented in his amended habeas petition, we find that such issues are not cognizable on appeal. *See* Syl. Pt. 2, *Sands v. Sec. Trust Co.*, 143 W.Va. 522, 102 S.E.2d 733 (1958) (holding that "[t]his Court will not pass on a non[-]jurisdictional question which has not been decided by the trial court in the first instance").

4

# IN THE CIRCUIT COURT OF BROOKE COUNTY, WEST VIRGINIA

FILED

2015 DEC -7 PM 2:45

STATE OF WEST VIRGINIA, EX REL.
KURT M. RAY
    Petitioner

v.

                            Civil Action No.: 13-C-75
                            Original Case No.: 08-F-4

GREG YAHNKE, ACTING WARDEN
NORTHERN REGIONAL CORRECTIONAL FACILITY
    Respondent

## ORDER DENYING PETITIONER'S AMENDED PETITION FOR CONVICTION HABEAS CORPUS RELIEF

Before the Court is the Petitioner, Kurt M. Ray's Amended Petition for Conviction Habeas Corpus Relief. On November 15, 2013, the Petitioner filed an Amended Petition for relief from a five count guilty plea which the Petitioner entered into on March 18, 2009. The charges to which the Petitioner pled guilty are: Burglary, Threats to Kidnap, Kidnapping, Wanton Endangerment Involving Firearm, and Assault During Commission of a Felony.

After a sentencing hearing, the Petitioner was sentenced as follows: Burglary, not less than one nor more than fifteen years in the penitentiary; Threats to Kidnap, twenty years in the penitentiary; Kidnapping, life with eligibility for parole; Wanton Endangerment, five years in the penitentiary; Assault During the Commission of a Felony, not less than two nor more than ten years in the penitentiary. The Court Ordered all sentenced to run consecutively.

Mr. Ray filed his Original Petition for Writ of Habeas Corpus on June 3, 2013. This Court appointed counsel to represent Mr. Ray on July 20, 2013 and

1

Ordered that an Amended Petition be filed. On November 18, 2013 Counsel filed the Amended Petition for Writ of Habeas Corpus along with a completed checklist of Ground for Post-Conviction Habeas Corpus.

In the Checklist for Ground for Post-Conviction Habeas Corpus Relief Mr. Ray has specifically waived the following grounds for Habeas Corpus Relief: Trial Court Lacked Jurisdiction; Statute Under Which Conviction Obtained Unconstitutional; Indictment Shows On Face No Offense Was Committed; Language Barrier To Understanding Proceedings; Denial Of Counsel; Unintelligent Waiver Of Counsel; Falsification Of Transcript By Prosecutor; Unfulfilled Plea Bargain; No Preliminary Hearing; Illegal Detention Prior To Arraignment; Improper Venue; Prejudicial Joinder Of Defendants; Lack Of Full Public Hearing; Non-Disclosure Of Grand Jury Minutes; Claims Concerning Use Of Informers To Convict; Instructions To Jury; Claims Of Prejudicial Statements By Trial Jury; Acquittal Of Co-Defendant On Same Charge; Defendant's Absence From Part Of Proceedings; Amount Of Time Served On Sentence, Credit For Time Served.

The Court **FINDS** that the Defendant has, with the assistance of counsel, knowingly waived all ground for relief listed as waived in the Checklist of Ground for Post-Conviction Habeas Corpus Relief attached hereto and incorporated by reference herein.

In his Amended Petition, the Petitioner cites six grounds for his Writ of Habeas Corpus. They are: 1) ineffective counsel; 2) competency and incapacity to stand trial due to alcohol and drug abuse; 3) coerced guilty plea; 4) excessive

2

sentence and more severe sentence than expected; 5) mistaken advice from counsel on probation or parole; 6) double jeopardy; 7) Violation of Confrontation Clause at sentencing.

After reviewing and considering the Petition, the State's Response to the Petition, the court files, the transcripts and the pertinent legal authority, the Court finds and concludes that the facts and legal arguments are adequately presented, and that the decisional process would not be significantly aided by oral argument. The Court DENIES the Petitioner's Amended Petition for Habeas Corpus relief. In support of the aforementioned ruling, the Court makes the following GENERAL FINDINGS of FACT and CONCLUSIONS OF LAW:

## I. PROCEDURAL HISTORY

On January 11, 2008 the State alleged that the Petitioner entered the residence of a former paramour, Ms. Minda, armed with a gun and forced her to leave with him. He then took Ms. Minda to a grassy area on Route 2 in Brooke County, near where he had parked his vehicle. The Petitioner, wearing gloves, hit her repeatedly, forcibly removed her clothing and the inserted his fingers in her vagina. During the encounter the Petitioner and Ms. Minda struggled and his gun discharged.

Ms. Minda's children were in the family home at the time of the abduction and they alerted a neighbor to the kidnapping. The Wellsburg police located the Petitioner and Ms. Minda walking on Sesame Street when they observed Ms.

3

Minda, clothed in only a flannel jacket, with the Petitioner. She screamed for help. The police then apprehend the Petitioner without incident.

The Police located Mr. Ray's vehicle off of Route 2 where they found rubber gloves, a Ruger 9mm semi-automatic handgun, various pieces of clothing and a set of handcuffs. These items were sent to the State Police Lab for testing. Ms. Minda was taken to Wheeling Hospital Emergency Room for examination. Ms. Minda was observed to have ecchymosis to her left eye, chin, and left jaw; dried blood in her nostril and thighs, redness to her arms as well as numerous small areas of tearing to the inner labia and introitus. A rape kit was completed and given to the Brooke County Sheriff's Department.

On January 16, 2008 the Petitioner appeared before the Magistrate Court with appointed counsel, public defender Jack Wood. The Preliminary Hearing was continued and a speedy Preliminary Hearing was waived to enable the Defendant to confer with his counsel. A Preliminary Hearing was conducted on February 20, 2008 after which the Magistrate found that there was probable cause to bind the case over to the grand jury and remanded the Petitioner back to the custody of the Northern Regional Jail.

On March 3, 2008, the Brooke County Grand Jury, returned an indictment against the Petitioner for Burglary; Threats to Kidnap; Kidnapping; Wanton Endangerment; Sexual Assault in the First Degree; Sexual Assault in the Second Degree; and Assault During the Commission of a Felony.

4

At his arraignment on March 7, 2008 the Petitioner moved to continue the trial for the term of court due to the testing of the evidence that would need to be conducted. Without objection from the State, the motion was granted.

On May 6, 2008 the parties appeared for a status hearing and Counsel for the Petitioner requested the appointment of co-counsel to assist in the representation of Mr. Ray. The Court granted the request and appointed Gerald G. Jacovetty, Jr., to act as co-counsel.

On May 28, 2008 the parties appeared for a status hearing. The State indicated that they were awaiting DNA results from the State Police Laboratory. The Defense indicated that they were still exploring the possibility of finding real estate that could be posted for the Defendant's bond.

On July 1, 2008 the parties appeared before the Court on the Defendant's Motion to Reduce Bond. The Court denied the Defendant's Motion to reduce the $600,000.00 bond. The Court scheduled the matter for trial on October 15, 2008 and established various deadlines leading up to trial.

On August 29, 2008 the Defendant filed a Motion to Recuse the Brooke County Prosecutor based upon Mr. Ray having been previously represented by the father of Assistant Prosecuting Attorney William J. Ihlenfeld, II in an unrelated Marshall County DUI matter in 1983. On September 12, 2008 the Motion to Recuse was denied by the court.

On February 4, 2009 the Petitioner filed a Motion for Dismissal. The Petitioner alleged that the prosecution of the two charges of Threats to Kidnap and

5

Kidnapping stemming from the same incident, constitutes double jeopardy. The Defendant also filed a Motion for Bill of Particulars seeking the evidentiary distinction that Count 4(Wanton Endangerment) is not a brandishing allegation and whether Counts 5 (Sexual Assault in the First Degree) and Count 6 (Sexual Assault in the Second Degree) were the same incident.

Before the Court ruled on the Motions, the parties appeared on March 18, 2009, to tender a proposed plea agreement to the Court. The plea agreement allowed the Defendant to enter guilty pleas to Count I, Burglary; Count 2, Threats to Kidnap; Count 3, Kidnapping; Count 4, Wanton Endangerment; Count 7, Assault during the Commission of a Felony. The State agreed, that if the Petitioner entered the guilty pleas set forth in the written plea agreement that it would ask the court to dismiss Counts 5, Sexual Assault in the First Degree and Count 6, Sexual Assault in the Second Degree. In the plea agreement the parties agreed that the sentencing would be at the discretion of the Court. However, the plea agreement specifically set forth that the State would be requesting that the Court run the sentences consecutively for a fixed number of years, making the Petitioner ineligible for parole for at least thirty years. Finally, the plea agreement stated that the Petitioner was forever waiving his right to challenge the validity of the plea agreement or to attempt to set aside or nullify his convictions by habeas corpus, in state or federal court, or to otherwise challenge the validity of his convictions in any legal proceeding of any nature in any court.

6

The transcript of the Plea Hearing relates how the Court spoke to the Defendant at length about his ability to understand the plea and the voluntariness of the plea.

On April 24, 2009 a Sentencing Hearing was conducted by the Court. The court first addressed the Presentence Report, verifying that the defendant and his counsel both had an opportunity to review its contents. Mr. Wood, co-counsel for Mr. Ray, signified that no factual errors had been brought to his attention, however he wanted the Court to know that the sentence recitation on Count 5, to which the Petitioner did not enter a guilty plea, was incorrect.

Mr. Wood presented to the Court many written statements in support of the Petitioner. Additionally Mr. Wood called James Ray, the Petitioner's father; Gary Kashak, the Petitioner's cousin by marriage; Gary Sales, Petitioner's friend, to testify on behalf of Mr. Ray. After this testimony was presented, Mr. Wood said that although there were other individuals in the courtroom who had traveled to support the Petitioner at the sentencing, and had submitted letters on his behalf, none wished to testify. Mr. Ray's counsel and Mr. Ray then addressed the Court, counsel arguing for mercy and Mr. Ray exercising his right of allocution.

The State of West Virginia then presented the testimony of the victim and Brenda Amico, the sexual assault nurse examiner at Wheeling Hospital who treated Ms. Minda upon her admission to the emergency room.

After the presentation of the testimony the Court sentenced the defendant to serve the following consecutive sentences: Burglary, one to ten years; Assault

7

during the Commission of a Felony, two to ten years; Kidnapping, life with the eligibility for parole; Wanton Endangerment, five years; Threats to Kidnap, twenty years.

On December 8, 2009 the Defendant filed an Appeal to the Supreme Court of Appeals of West Virginia alleging that the Sentence received by the Defendant for Threats to Kidnap, while permissible by statute was excessive and disproportionate. That appeal was refused on March 8, 2010.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment of the United States Constitution and Article III, Section 14 of the West Virginia Constitution both guarantee to the criminally accused the right to counsel. State ex rel. Humphries v. McBride, 220 W.Va., 362, 647 S.E.2d 798 (2007). The appointment of an alleged incompetent attorney to a defendant in a criminal proceeding amounts to a denial of the right to the assistance of counsel, guaranteed by Article III, Section 14, of the Constitution of this State and by the Sixth Amendment to the Constitution of the United States.

In State v. Miller, 194 W.Va. 3, 459 S.E.2d 114 (1995) the West Virginia Supreme Court of Appeals stated claims of ineffective assistance of counsel are to be governed by the two-pronged test established in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

8

In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue. State v. Miller, 194 W.Va. 3, 459 S.E.2d 114 (1995). In cases involving a criminal conviction based upon a guilty plea, as here, the prejudice requirement of the two-part test established by Strickland/Miller, demands that a habeas petitioner show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

In his Amended Petition Mr. Ray, through his counsel, has raised five issues he believes demonstrate that his counsel was ineffective. The Court will address each issue separately.

## A. Counsel Failed to Assert the Petitioner's Intoxication on the Night of the Offense

The Petitioner argues that his counsel never entered his drug and alcohol abuse into the record nor that he was intoxicated at the time of the offense. The Petitioner alleges that 1) this prevented him from mitigating his charges and 2) deprived him of a key defense to the "specific intent" charges before the court. For the following reasons the Court concludes that that argument has no foundation in fact and is without any merit.

9

The West Virginia Supreme Court of Appeals has previously ruled that "[v]oluntary intoxication and self-defense are affirmative defenses. The time for the accused to present evidence of an affirmative defense is at trial, however, when the accused enters a plea of guilt, he **waives his right to present such evidence** and make such claims and requests." Tamburo v. Pszczolkoski, 2015 WL 3751825, at 8 (W. Va. June 15, 2015) (emphasis added). Because Mr. Ray pleaded guilty to the offenses of Burglary, Threats to Kidnap, Kidnapping, Wanton Endangerment Involving a Firearm, and Assault during the Commission of a Felony he waived his right to a trial, and with that waiver, he waived any right to raise the affirmative defense of voluntary intoxication. Moreover, the Court warned the defendant specifically, prior to the entry of his guilty pleas, that "[y]ou will be waiving, losing, all issues of law that may be present in your case and that may develop during the trial, if you enter any guilty plea today."

The Petitioner claim that counsel failed to develop a voluntary intoxication defense both for trial and for sentencing mitigation is also without merit.

First, the Petitioner denied a history of treatment.

> THE COURT: Have you ever been treated for any mental illness?
> MR. RAY: No.
> THE COURT: Have you ever been treated for any drug or alcohol abuse?
> MR. RAY: No.

Next, the records in the case file do not support that at the time of the offense the Defendant was grossly intoxicated.

10

Finally, both counsel and Mr. Ray addressed his voluntary intoxication during the sentencing hearing. Specifically during the allocution Mr. Wood stated:

> "But then you look at the person that everyone has known for forty some years, that's not the person. Then you have to look at the other items that are in the equation, which is the alcohol and medications and the potential mental illnesses are available, not severe, but available that creates for this night, this thing that's not the Kurt Ray that everybody knows. And the creation is what has done this. Kurt Ray, the man is the one who has to serve the sentence for the decision that was made for his lack of control on this night. "

Mr. Ray, in his allocution, also used his use of alcohol to try to seek a reduced sentence: "I was drunk. I was under the influence of alcohol, drugs. I know that's not an excuse, but I do need help for it." Thus, the Court was aware of the alcohol excuse when it sentenced Mr. Ray.

Mr. Ray has failed to meet even the first prong of the *Strickland* test because it is clear from the record that trial counsel's performance was not deficient under an objective standard of reasonableness. Also, the second prong of *Strickland* clearly cannot be met as there is no reason to believe that the outcome—petitioner's decision to plead guilty—would have been any different.

## B. Petitioner Claims He Was Pressured By Counsel to Enter Into the Plea Agreement

As a second claim to the ineffectiveness of his counsel, the Petitioner states that he was pressured by his counsel into accepting the plea agreement and entering a plea of guilty.

This claim is also without merit. Although the plea agreement entered into by Mr. Ray was reached just one day prior to the matter proceeding to trial, the

11

Court addressed the Defendant at length to make sure that the defendant understood what the plea agreement said and that he was asking the court to accept it. The following excerpts disclose that the Court told the defendant that he would be given more time to consider his plea agreement and the defendant responded that he had reviewed it and had a full opportunity to discuss it with his attorney.

> THE COURT: This Plea Agreement, as I understand it, was just reduced to writing today. Is that correct or not.
> MR. BARKI: Yes.
> THE COURT: It is. And I ask that, Mr. Ray, because I want to make certain, since this is your Plea Agreement that you're asking that I accept, and it is a contract that you have entered into with the State of West Virginia, that you had the opportunity to review it before this hearing started, because if you haven't, I am going to give you time to do that.
> MR. RAY: Yes, sir, I have reviewed it.
> THE COURT: All right. And have you had a full opportunity to discuss this proposed Plea Agreement with your two attorneys, Mr. Jacovetty and Mr. Wood?
> MR. RAY: Yes, sir.
>
>                                    ....
>
> THE COURT: And other than the threat of what might happen to you if a Jury found you guilty of all these offenses, that's not the kind of ···that's a concern, not really a threat, but has anybody threatened you to say, "hey, you know you better get in there and enter these guilty pleas because you never know that this Judge is going to do," or – well, just anything out there like that ···
> MR. RAY: No, Your Honor.
> THE COURT: ···that caused you to feel you have been threatened you?
> MR. RAY: I haven't been threatened.
> THE COURT: Are you satisfied with the legal counsel that your two attorneys have provided to you?
> MR. RAY: Yes, Your Honor.

The record clearly shows that prior to entering his plea of guilty Mr. Ray confirmed that he understood the charges in the indictment, elements of crime with

12

which he was charged, and that he knew he did not have to enter a plea of guilty. Mr. Ray acknowledged that he understood pleading guilty would waive each of his Constitutional rights as outlined by the court, that he did not feel threatened and was given opportunities to discuss the plea agreement further with his counsel if he so chose. Finally, a discussion in open court took place as to the potential sentences that he would face at the time of sentencing and the court confirmed that Mr. Ray was not promised that the court would impose any particular sentence. At no point during the hearing did Mr. Ray claim that he was being coerced into signing the agreement, that he was entering into involuntarily, or that he had had insufficient time to review its contents or the consequences of signing it.

Mr. Ray has failed to meet even the first prong of the *Strickland* test because it is clear from the record that trial counsel's performance was not deficient under an objective standard of reasonableness. Also, the second prong of *Strickland* clearly cannot be met as there is no reason to believe that the outcome—petitioner's decision to plead guilty—would have been any different.

## C. Petitioner Claims He was Depressed and Under the Influence of Medication Prescribed to Treat His Depression

Mr. Ray asserts that he was ill-equipped to make a rational decision in accepting the Plea Agreement due to his depression. He further states that he asked for additional time to consider the plea and was denied. However there is no evidence to support these claims.

As previously stated Mr. Ray disclosed during the plea colloquy that he was recently prescribed medication by the medical staff at the jail for "depression." Mr.

13

Ray then specifically denied that the medication or his depression interfered with his ability to understand the terms of the plea.

> THE COURT: Are you taking any medication now?
> MR. RAY: Yes.
> THE COURT: What medication are you taking?
> MR. RAY: Celexa.
> THE COURT: What is the purpose of that?
> MR RAY: Depression.
> THE COURT: And that was prescribed after you were incarcerated or before?
> MR. RAY: Yes, after
>
> ....
>
> THE COURT: Does that medication interfere with our ability to be alert and understand what's happening around you?
> MR. RAY: No, I understand.

Additionally, the court informed Mr. Ray several times during the plea hearing that he could have more time to consider the plea, but Mr. Ray declined. Further, even if there was a history of mental illness, under West Virginia law that would not, in and of itself, render a defendant incompetent to enter a knowing and voluntary plea.

The record is void of any evidence supporting Mr. Ray's assertion that he plead guilty involuntarily, and the defendant's unsupported claim is not a sufficient reason for this Court to find that his plea was as a result of ineffective assistance of counsel. Again the Court concludes that these claims are without merit.

### D. Petitioner Claims His Counsel Failed to Correct Errors within the Pre-Sentence Report

Mr. Ray alleges as evidence of his claim of ineffective counsel that his counsel failed to correct "errors" contained in the pre-sentence report, but he doesn't say

14

what the "errors" in the pre-sentence report are and how they impacted the sentence imposed by the Court.

The record discloses that Counsel for Mr. Ray did address one perceived error at the time of sentencing, but realizing that he was wrong, withdrew the objection. However, during the sentencing, counsel for both the State and Mr. Ray did alert the Court that the presentence report incorrectly stated that punishment for the burglary offense was not less than one nor more than ten years in the penitentiary when it should have said r that the proper penalty was not less than one nor more than fifteen years in the penitentiary.

This was not an error of any consequence to the Court when it imposed sentence. In reviewing the pre-sentence report, the correct penalty for this offense is stated three times, including a copy of the statute which describes the offense of Burglary and its penalty. Further, the defendant was correctly informed of the possible penalty for Burglary at the time the Court considered and accepted the Petitioner's plea of guilty. Because Mr. Ray has failed to demonstrate any "error" in his pre-sentence investigation to which his counsel did not object and one that could have caused the Court to impose an improper sentence, this claim is without merit.

E. Petitioner Claims Counsel Failed to Present Witnesses at the Sentencing Hearing

The Petitioner states in his Petition that his counsel failed to present all of the available witnesses that were prepared to vouch for the Petitioner's character at the sentencing hearing. .

15

Although the Court was not under any obligation at sentencing to permit defense counsel to permit testimony from witnesses, the Court did give Mr. Ray the opportunity to present four witnesses who all testified as to the Petitioner's character. That testimony was apparently presented to establish that Mr. Ray's actions were outside of his normal character and mitigate the sentence that would be imposed upon the Petitioner. Additionally, Mr. Ray's counsel was permitted to present twenty-six letters and two sworn affidavits written by various friends and family members, all relating to his character and seeking to mitigate his sentence.

After the four character witnesses testified Mr. Wood stated, "Your Honor, in regards to—the letters are numerous that we have supplied. *None of the other individuals want to speak.* They are various individuals from New Finland and other areas of Canada that traveled, people from Florida traveled here on Kurt's behalf." (emphasis added). The Court then recessed to read all of the letters.

The Supreme Court of West Virginia has stated that if failure to call a witness at trial is not due to dereliction on the part of counsel, then there is no ineffective assistance. *See,* State v. Spence, 182 W.Va. 472, 388 S.E.2d 498 (1989); State v. Hatfield, 169 W.Va. 191, 286 S.E.2d 402 (1982).

Although the Petitioner asserts that his counsel failed to allow for the Petitioner's mother and female relations to testify at the sentencing hearing the record clearly shows that at the time of the sentencing the other witnesses present did not wish to speak in open court. There is no law to support the Petitioner's claim. It too is without merit.

16

## CONCLUSION- INEFFECTIVE ASSISTANCE OF COUNSEL

The petitioner has failed to adduce evidence supporting either prong of the *Strickland–Miller* test: there is no evidence of deficient performance and there is no evidence that either of Mr. Ray's lawyers committed unprofessional errors that would have resulted in a different outcome to his case. Nor is there evidence of prejudice against the petitioner. Instead, the Petitioner has shown the effectiveness of his lawyers in negotiating a plea agreement in which the sexual assault charges were completely dismissed saving the Defendant the possibility of an additional indeterminate sentence of not less than twenty five (25) nor more than eighty (80) years. The Court concludes that counsel made no unprofessional errors. At the same time, the Court concludes that had this case gone to trial; there is a reasonable probability that the outcome would likely have been different, though not in favor of Mr. Ray.

## II. INVOLUNTARY ENTRY OF PLEA AGREEMENT

In his Amended Petition, the Petitioner asserts that he involuntarily entered into his plea agreement. Specifically he asserts that he felt pressured to take the plea agreement and that he was led to believe by counsel that he would receive a lesser sentence. Due process requires that a guilty plea be voluntary, knowing and intelligent. A habeas petitioner seeking to overturn his guilty plea bears the burden of persuasion with respect to the involuntariness of the plea. *See* syl. pt. 3, <u>State ex rel. Clancy v. Coiner</u>, 154 W.Va. 857, 179 S.E.2d 726 (1971). Whether a guilty plea

17

is voluntary depends upon information known by the defendant at the time the plea was entered. *See,* Henderson v. Morgan, 426 U.S. 637, 647, 96 S.Ct. 2253, 2258, 49 L.Ed.2d 108 (1976); State ex rel. Farmer v. Trent, 209 W. Va. 789, 795-96, 551 S.E.2d 711, 717-18 (2001).

As discussed above the record clearly shows that prior to entering his plea of guilty Mr. Ray confirmed that he understood the charges in the indictment, the elements of crimes with which he was charged, and that he knew he did not have to enter a plea of guilty. Mr. Ray acknowledged that he understood pleading guilty would waive each of his Constitutional rights as outlined by the court and that he was not entering his plea as the results of any threats and did not feel threatened. Additionally, Mr. Ray was given opportunities during the plea process to discuss the plea agreement further with his counsel if he so chose. At no point during the hearing did Mr. Ray claim that he was being coerced into entering the agreement, that he was entering into the agreement involuntarily, or that he had had insufficient time to review its contents or the consequences of signing it.

> MR. WOOD: There was some unruled upon··· there is an unruled upon issue, and he understands that that's just a legal argument. It is not black and white law. And that he is waving that, and he can't challenge that later. The conviction, if the pleas are accepted, the conviction stands, no legal arguments.
> THE COURT: Just one.
> MR. WOOD: Yes, Your Honor.
> THE COURT: Mr. Ray, I am, of course, unaware of what Mr. Wood talks about, in terms of what issue was discussed. But you understand that I will not be considering any issues of law, if I permit you to enter your guilty pleas today?
> MR. RAY: Yes, Your Honor, I understand.
> THE COURT:....So now is the time that if there have been any other promises made to you by anybody that have affected your decision to enter

18

guilty pleas, if that's what you do, you need to bring those to my attention now so I that can deal with them before we go further. So are you aware of any other promises that have been made to you that are not set forth in this Plea Agreement?

MR. RAY: No, Your Honor.

THE COURT: And other than the threat of what might happen to you if a Jury found you guilty of all these offenses, that's not the kind of ---that's a concern, not really a threat, but has anybody threatened you to say, "hey, you know you better get in there and enter these guilty pleas because you never know that this Judge is going to do," or – well, just anything out there like that ---

MR. RAY: No, Your Honor.

THE COURT: ---that caused you to feel you have been threatened you?

MR. RAY: I haven't been threatened.

THE COURT: Are you satisfied with the legal counsel that your two attorneys have provided to you?

MR. RAY: Yes, Your Honor.

Finally, a discussion in open court took place as to the potential sentences that Mr. Ray would face at the time of sentencing and the court confirmed that Mr. Ray was not promised that the court would impose any particular sentence.

THE COURT: All right. And in all honesty to you, Mr. Ray, it's very rare that the Supreme Court will change a Judge's decision, based upon the number of years, even though it seems outrageous. And the experience in the First Judicial Circuit is that some of those sentences have appeared to be outrageous, but nevertheless, they are legal.

............,....

MR. WOOD: I could advise the court that Mr. Ray understands, even under the best possible sentencing scenario, he is still going to serve at least a minimum of ten (10) years, based upon this kidnapping. And he understands that if in 10 years, he could be eligible, not a sentence of 10 years.

THE COURT: That's 10 actual years, not counting good time.

MR. WOOD: That's 10 actual years, Your Honor, before being eligible on the kidnapping charge.

................

THE COURT: All right. And, Mr. Wood, when you told your client that this is a non-binding Plea Agreement, what --- counsel, what did you tell him that that meant?

MR. WOOD: That meant the Court had discretion in the sentencing; how the sentences were to be run, whether concurrent or consecutive, for those with the indeterminate numbers. For the ones with determinate, I advised

19

him that the Court picks the determinate number. For the open-ended one, the threats to kidnap, I advised him that it would be a number that is no less than five years, but the number itself is up to the Court.

As previously stated above, the Mr. Ray asserts no further evidence to advance his claim that he involuntary entered into the plea agreement, except for his self-serving and unsubstantiated claims contained within his Amended Petition. The Court FINDS that Mr. Ray has failed to demonstrate that the entry of his Plea of Guilty to the offenses was involuntary and therefore this claim is without merit.

## III. PETITIONER RECEIVED A "SEVERE" SENTENCE IN LIGHT OF HIS LACK OF CRIMINAL HISTORY

The petitioner alleges that his sentence was more "severe" than he was anticipating and alleges that his Counsel advised him that he would be eligible for parole sooner than the Court allowed during sentencing, however, it is acknowledged in the Amended Petition for Habeas Corpus that there is no factual basis in the record to support this claim.

Although the Petitioner does not specifically state in his Petition the constitutional basis for his claim, the Court will consider his argument to be that the Court violated both State and Federal Constitutional law by imposing an impermissibly harsh sentence disproportionate to the character and degree of the underlying offenses. Article III, Section 5 of the West Virginia Constitution contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution and requires that "[p]enalties shall be proportioned to

20

the character and degree of the offence." Syl. pt. 8, State v. Vance, 164 W.Va. 216, 262 S.E.2d 423 (1980). In its interpretation of this provision, the West Virginia Supreme Court has recognized that "punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience of and offends fundamental notions of human dignity, thereby violating West Virginia Constitution, Article III Section 5 that prohibits a penalty that is not proportionate to the character and degree of an offense." Syl. pt. 5, State v. Cooper, 172 W.Va. 266, 304 S.E.2d 851 (1983).

The Cooper test asks whether the sentence for the particular crime shocks the conscience of the court and society. If a sentence is so offensive that it cannot pass a societal and judicial sense of justice, the inquiry need not proceed further. However, if it cannot be said that a sentence shocks the conscience, a disproportionality challenge is guided by the objective test spelled out in Syllabus Point 5 of Wanstreet v. Bordenkircher, 166 W.Va. 523, 276 S.E.2d 205 (1981):

In Wanstreet the West Virginia Supreme Court has stated that a disproportionality challenge should be resolved by more objective factors, including the nature of the offense, the defendant's past criminal history, and his proclivity to engage in violent acts. Additionally, the rules regarding disproportionate sentences are generally limited to sentences where there is either no fixed maximum set by statute or where there is a life recidivist sentence.

21

Before analyzing the proportionality of Mr. Ray's sentence, the Court notes that Mr. Ray's sentences for Burglary, Assault during the Commission of a Felony, and Wanton Endangerment have fixed maximums set by statute and this alone merits denial of relief on this ground for those crimes. The offense of Kidnapping has a possible life sentence, and Threats to kidnap has no mandatory maximum sentence, so the court will consider both the subjective and objective factors of Cooper and its progeny.

Applying the subjective test to the facts in this prosecution it is important to note that the court did show mercy to Mr. Ray by giving him a Kidnapping sentence of life with eligibility for parole and a twenty-year sentence for threats to kidnap based upon the severe impact of Mr. Ray's crimes should not shock the conscience of society. The statement of Ms. Minda presented during the sentencing hearing by the State portrayed a severe and horrifying night with significant emotional and psychological impact on Ms. Minda and her children. These actions can only be minimally tempered by the fact that the crime may have been out of character for Mr. Ray. As such, based on review of the subjective factors, the sentence imposed upon the petitioner is not shocking to the conscience and Mr. Ray needs to understand that the Court did not have to accept the plea agreement but so, in large part, to spear the victim of his horrible crimes the emotional stress of having to testify at a trial.

The same response can be- and is- made when considering objective test. The court has determined that the sentences are not disproportionate to the nature of

22

the offenses and are significantly less than the term of incarceration the Court could have imposed had the petitioner been convicted of all counts in the indictment by a jury. Mr. Ray's lack of criminal history and the issue of whether he has the proclivity to commit such acts was considered by this court and is reflected in the court's sentence on the Threat to Kidnap offense and the Court's acceptance of a finding that Mr. Ray would be eligible for parole.

The Court is satisfied that the sentences of life with possibility of parole and twenty years imposed for Kidnapping and Threats to Kidnap respectively are both proportionate to the crimes committed. Therefore, no violation of state or Federal constitutional law exists, and Petitioner is not entitled to habeas corpus relief.

## IV. CONVICTION OF THE OFFENSE OF THREATS TO KIDNAP AND KIDNAPPING VIOLATES THE CONSTITUTIONAL RIGHT AGAINST DOUBLE JEOPARDY

The Petitioner claims that his conviction of both Kidnapping and Threats to Kidnap are not two distinct, separate offenses, and therefore violate his right against double jeopardy guaranteed in the Fifth Amendment of the United States Constitution. Double jeopardy prevents successive prosecutions and multiple punishments for the same offense. State v. Rahman, 199 W.Va. 144, 152, 483 S.E.2d 273, 281 (1996) Syl. Pt. 1, State v. Gill, 187 W.Va. 136, 416 S.E.2d 253 (1992). In State v. Johnson, 197 W.Va. 575, 476 S.E.2d 522 (1996), The West Virginia Supreme Court has stated that the only constitutional test used to determine whether multiple prosecutions violate double jeopardy is the "same evidence" test as

23

announced by the United States Supreme Court in <u>Blockburger v. United States,</u> 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

Mr. Ray entered a plea of guilty to the offense of Kidnapping as contained in West Virginia Code § 61-2-14a and Threats to Kidnap as contained in West Virginia Code §61-2-14c. In reviewing the statutes the Court finds that Threats to Kidnap requires proof of a communication on the part of the defendant that threatens, either directly or indirectly to kidnap a person. Kidnapping, however, requires proof that the defendant actually restrained his victim, which Threats to Kidnap does not require. Here, the facts set forth by the State of Threats to Kidnap were not subsumed by the facts set forth to prove the Kidnapping charge. Mr. Ray first threatened Ms. Minda with kidnapping in her home at gunpoint. He then actually did kidnap Ms. Minda when he physically forced her from her home to the grassy area where he raped her. Therefore, because both Threats to Kidnap and Kidnapping, in this instance, require and have distinctly different proof, the court concludes the indictment does not violate double jeopardy principles.

## V. TESTIMONY OF BRENDA AMICO AT THE SENTENCING HEARING VIOLATED HIS SIXTH AMENDMENT RIGHT TO CONFRONTATION

Brenda Amico was an attending nurse to the victim, Ms. Minda, when she was admitted to the emergency room at Wheeling Medical Center on the night of the crime. The State of West Virginia called Ms. Amico at the Petitioner's sentencing hearing to testify as to the injuries sustained by Ms. Amico as a result of Mr. Ray's actions. The Court allowed the State to present this testimony of Ms. Amico, but limited it to only the injuries she observed to Ms. Minda on the night of

24

the kidnapping, and prohibited the Petitioner from cross-examining Ms. Amico. The Petitioner asserts that allowing Ms. Amico to testify at the sentencing hearing without affording him the opportunity to cross-examine her violated his Sixth Amendment right to confront the witnesses against him.

The Sixth Amendment to the United States Constitution and Section 14 of Article III of the West Virginia Constitution guarantee an accused the right to confront and cross-examine witnesses. The Confrontation Clause contained in the Sixth Amendment provides: "In all criminal prosecutions, the accused shall ... be confronted with the witnesses against him [.]" Likewise, the Confrontation Clause contained in the *West Virginia Constitution,* Section 14 of Article III, provides that in the "[t]rials of crimes, and misdemeanors ... the accused shall be... confronted with the witness against him[.]"

Although West Virginia has never directly addressed the issue of whether the right to confrontation extends to sentencing hearings, the United States Supreme Court, and nearly all other jurisdictions, have addressed the issue and have consistently held that the right to confrontation does not require that a defendant be allowed to confront and cross-examine witnesses at sentencing proceedings. See, Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); United States v. Powell, 650 F.3d 388, 393 (4th Cir. 2011); United States v. Bras, 483 F.3d 103, 109 (D.C.Cir.2007); United States v. Robinson, 482 F.3d 244, 246 (3d Cir.2007); United States v. Beydoun, 469 F.3d 102, 108 (5th Cir.2006); United States v. Bustamante, 454 F.3d 1200, 1202–03 (10th Cir.2006); United States v. Littlesun,

25

444 F.3d 1196, 1199–1200 (9th Cir.2006); United States v. Stone, 432 F.3d 651, 654 (6th Cir.2005); United States v. Brown, 430 F.3d 942, 943–44 (8th Cir.2005); United States v. Cantellano, 430 F.3d 1142, 1146 (11th Cir.2005); United States v. Roche, 415 F.3d 614, 618 (7th Cir.2005); United States v. Luciano, 414 F.3d 174, 179 (1st Cir.2005); United States v. Martinez, 413 F.3d 239, 242–44 (2d Cir.2005); Commonwealth v. Nunez, 446 Mass. 54, 841 N.E.2d 1250 (2006); People v. Lassek, 122 P.3d 1029 (Colo.Ct.App.2005); State v. Rodriguez, 738 N.W.2d 422 (Minn. Ct. App. 2007).

The Court FINDS that the Petitioner had no right under the Sixth Amendment to confront Ms. Amico regarding her testimony during the sentencing hearing and therefore this claim is without merit.

WHEREFORE, it is accordingly ORDERED, for all of the forgoing reasons stated herein, the Petition for Habeas Corpus Relief is DENIED. And it is further

ORDERED that the Clerk of the Circuit Court is directed to provide copies of this Order to all counsel of record and it is further

ORDERED that this matter be stricken from the active docket of the Court.

ENTERED this __7__ day of December, 2015.

_____
Ronald E. Wilson, Judge

26