## CHARLESTON.

LENA H. RICHARDSON ADMRS. *et als.* v. LYDIA A. HARDMAN, WIDOW, ETC., *et als.*

Submitted January 29, 1924.  Decided November 25, 1924.

1. DEEDS—*Grantee of Deed Poll and Those Claiming Under Him Cannot Repudiate Repugnant Provisions After Confirmation and Acquiescence.*

   A deed poll, after acceptance by the grantee, becomes the mutual act of the parties; and their successors, while claiming thereunder, cannot repudiate its provisions which are repugnant to their interests. This principle should be applied especially where the grantee and those claiming under him have subsequently, by written acts, confirmed the unfavorable provisions of the conveyance and for many years acquiesced therein, accepting rents and royalties according to the terms of the deed. (p. 577.)

         (Deeds, 18 C. J. § 124).

2. EQUITY—*Demurrer Should be Sustained to Bill Showing That Plaintiffs and Parties Under Whom They Claim Have Parted With Whatever Interest They Had in Subject Matter of Litigation.*

   Where the bill in a chancery cause shows that the plaintiffs,

or those under whom they claim, have parted with whatever interest they may have had in the subject matter of litigation, a demurrer thereto should be sustained.   (p. 577.)

(Equity 21 C. J. § 311.)
NOTE:   Parenthetical references by Editors C. J.—Cyc. Not part of syllabi.

Question certified from Circuit Court, Tyler County.

Suit by Lena H. Richardson, administratrix, and others, against Lydia A. Hardman, widow, etc., and others.   Demurrer to the bill was overruled, and the question certified.

*Reversed and remanded.*

*G. D. Smith* for plaintiffs.

*Pugh & Pugh* and *Boreman & Carter* for defendants.

LITZ, JUDGE:

This suit was brought to January rules, 1923, by the administratrix, distributees and heirs at law of Francis D. Hardman, deceased, against the administrator, distributees and heirs at law of O. W. O. Hardman, deceased.  Francis D. Hardman and O. W. O. Hardman died intestate, the former January 22, 1919, and the latter July 17, 1917. They were brothers and sons of Harrison H. Hardman.   The object of the suit is to recover from the administrator, distributees and heirs at law of O. W. O. Hardman, oil, gas and gasoline royalties accruing to Francis D. Hardman in his lifetime and to the plaintiffs, as his distributees and heirs at law, since his death, on account of alleged joint ownership by Francis D. Hardman and O. W. O. Hardman of oil, gas and mineral interests in lands; and to obtain a commissioner's deed conveying to the plaintiffs the disputed oil, gas and mineral interests.

The bill alleges that Harrison D. Hardman died intestate November 30, 1864, owning equally with Z. C. White six several tracts of land situated in Tyler and Doddridge Counties, West Virginia, containing respectively 1,683 acres, 303 acres, 76 acres, 54 acres, 5½ acres and 25 acres, and leaving as his distributees and heirs at law a widow, Amanda F. Hardman and five children, to wit:   O. W. O. Hardman, Francis D. Hardman, H. H. Hardman, Florence M. Hard-

man (who afterwards married Thomas Smith), and Hattie Hardman (later the wife of W. H. Furbee); that thereafter the interest of Z. C. White in said lands was sold under a deed of trust given to secure the payment of a debt to Harrison H. Hardman, and purchased for the benefit of the Harrison H. Hardman estate by W. S. Morey, a son of Amanda F. Hardman by a former marriage; that having obtained a deed to himself, under his purchase for the interest of Z. C. White in said lands, about the year 1865, before carrying out the trust, W. S. Morey died intestate leaving the following heirs and distributees: his mother, Amanda F. Hardman, a sister, Margaret Morey, and brother, D. M. Morey; that Margaret Morey after intermarrying with D. H. Smith, died intestate, survived by her husband, D. H. Smith, and a son, the defendant, H. W. Smith; that the deed dated May 18, 1891, D. H. Morey quit-claimed to O. W. O. Hardman for the benefit of Harrison H. Hardman's estate his claim and interest in said lands, and by deed of October 7, 1892, the defendant, H. W. Smith, and his father, D. H. Smith, likewise quit-claimed to O. W. O. Hardman their claim and interest therein; that H. H. Hardman and Florence M. Smith, (nee Hardman) and husband having theretofore conveyed to O. W. O. Hardman their interests in the estate, on October 8, 1892, Amanda F. Hardman, O. W. O. Hardman and wife, Francis D. Hardman and wife, Hattie Furbee (nee Hardman) and husband, executed an oil and gas lease to Michael Murphy and S. H. Bradley covering a tract of about 1,000 acres of said lands, providing that payment of delay rentals stipulated therein, "may be made in bond or by deposit to the credit of O. W. O. Hardman in the National Bank of Wheeling, West Virginia".

That on July 18, 1893, Hattie Furbee and husband conveyed to O. W. O. Hardman her entire interest in said estate, the consideration being $3,000.00 cash and payment of the oil and gas royalties on said interest to her two daughters, Daisy and Hazel, during their minority; that the sums paid by O. W. O. Hardman under this agreement for the benefit of Daisy up to April 28, 1908, when she become twenty-one, and for the benefit of Hazel up to March 20, 1912, the date of reaching her majority, aggregated about $20,000 to each; that on June

18, 1895, Florence M. Smith and husband; in consideration of $1,000.00 executed a curative deed conveying to O. W. O. Hardman her entire interest in her father's estate.

The bill further alleges that notwithstanding their previous quit-claim deeds, about 1893 or 1894, D. H. Morey and H. W. Smith set up claims to part of the oil and gas royalties from said lands, in settlement of which O. W. O. Hardman, with the consent of Francis D. Hardman, agreed by parole to pay each of them for life 2/25 of said oil and gas royalties; and that H. H. Hardman, who had obtained from O. W. O. Hardman a reconveyance of his interest in the estate, contributed one-fifth of the oil and gas royalties therefrom as his share of the burden assumed in effecting this settlement.

The bill further charges that the interests of Hattie Furbee and Florence M. Smith were purchased by O. W. O. Hardman for the joint benefit of himself and Francis D. Hardman, the latter paying one-half of the consideration therefor; and asks for an accounting by defendants to the plaintiffs of oil and gas royalties collected by O. W. O. Hardman and defendants, as follows:

(1)    On one-half of the Hattie Furbee interest since the majority of her two daughters, Daisy and Hazel.

(2)    On one-half of the Florence Smith interest since October 12, 1903, when it is alleged that the D. H. Morey claim was purchased by O. W. O. Hardman for the joint benefit of himself and Francis D. Hardman, less 1/5 thereof received by Francis D. Hardman and the plaintiffs, and also 1/10 thereof, the share of Francis D. Hardman and plaintiffs in the amount paid by O. W. O. Hardman and the defendants to H. W. Smith; or 1/5 of the Florence Smith interest from said date.

In opposition to the plaintiffs' claim, the bill shows:

(1)    O. W. O. Hardman by deed of May 26, 1913, conveyed to Francis D. Hardman an undivided 1/5 interest in the lands, subject to an express reservation to the grantor of 4/5 of the coal, oil and gas royalties.

(2)    On June 2, 1913, O. W. O. Hardman and Francis D. Hardman entered into a written settlement involving many thousands of dollars, in which the latter was given credit for

only 6/25 of the accrued oil and gas royalties from the lands, theretofore collected by the former; the total of royalties at that time being $241,031.56.

(3)   November 17, 1917, after the death of O. W. O. Hardman, Francis D. Hardman, in order to obtain payment of royalties direct to himself, signed a written order to the Pure Oil Pipe Line Company, operating and paying royalties under the oil and gas lease, which set forth his interest as 6/25 of the royalties.

(4)   July 24, 1921, after the death of Francis D. Hardman, the plaintiffs for the same purpose also signed a like order to the Pure Oil Pipe Line Company, stating their interest in said royalties to be 6/25.

(5)   The claim here asserted was never prosecuted until the institution of this suit.

Plaintiff's counsel attempt to excuse the long delay on the part of Francis D. Hardman and those claiming under him. It is argued that O. W. O. Hardman, up to the time of his death having collected and distributed royalties under the oil and gas lease, and otherwise exercised general supervision of his father's estate, became trustee for his brother Francis D. Hardman of the property in controversy; and the trust being "express," "implied" and "resulting" neither laches nor the statute of limitations has barred its enforcement. This argument must assume that laches and the statute of limitations being disregarded, a prima facie case for relief has been pleaded. If the case made out by the bill does not meet this requirement then, of course, it is unnecessary to determine the effect of the laches and the statute of limitations thereon. The facts admitted in the bill conclusively show the claim asserted by the plaintiffs to be without merit or legal efficacy. It is foreclosed by the deed of May 26, 1913, from O. W. O. Hardman to Francis D. Hardman reserving to the former the property in dispute. There is no contention that Francis D. Hardman did not accept this deed, which is confirmed by the settlement of June 2, 1913, and the orders thereafter signed by Francis D. Hardman and the plaintiffs for the distribution of the royalties. 6/25 of the royalties, shown in the settlement and orders as the Francis D. Hardman interest, ac-

counts for the 1/5 which he inherited from his father's estate and the 1/25 conveyed by deed. The plaintiffs affirmatively allege that they do not disclaim or repudiate the deed, but "take it for what it purports to convey." Hence it should be accorded full force and effect. One who claims under a deed confirms all its provisions, and cannot establish his claim by adopting only those provisions which are in his favor while he repudiates or contradicts others that are repugnant to his interests. 18 C. J. 205; *Jacobs* v. *Miller,* 50 Mich. 119, 15 N. W. 42. The acceptance of a deed poll makes it the mutual act of the parties. Devlin on Real Estate, Sec. 1760. As was said in *Jones* v. *Wood,* 16 Pa. St., 25. "By such an acceptance parties to the transaction are absolutely precluded from looking behind the conveyance for subjects of strife suggested by other prior negotiations and contracts; for the last step is esteemed as indisputably expressive of their final conclusions". Whatever, therefore may have been the interest of Francis D. Hardman prior to his acceptance of the deed, that interest, while the conveyance stands, is limited and measured by the terms thereof. The principle should be applied with especial emphasis in a case like this where the grantee and those claiming under him have subsequently by written acts confirmed the unfavorable provisions of the conveyance, and for many years acquiesced therein, by acceptance of rents and royalties in accordance with the terms of the deed.

The cause having been certified from the action of the circuit court overruling the demurrer to the bill, the ruling of the circuit court will be reversed, the demurrer sustained, and the case so certified.

*Reversed and remanded.*