OLIVER J. SANDS, *et al.*

*v.*

SECURITY TRUST COMPANY, *etc., et al.*

(No. 10910)

Submitted February 18, 1958. Decided April 1, 1958.

*Wm. Bruce Hoff, John S. Stump, Jr., Chauncey D. Hinerman,* for appellants.

*Riley & Riley, Paull, Petroplus & Bailey, Schmidt, Hugus & Laas, Henry S. Schrader,* for appellees.

RILEY, JUDGE:

This is a suit in equity brought in the Circuit Court of Ohio County by some of the heirs and next of kin of Harry S. Sands, deceased, in which the plaintiffs in their original bill of complaint seek to have declared void *ab initio* the allegedly perpetual trust created by Item III of the Last Will and Testament of testator, dated March 11, 1952, and probated on July 3, 1952. The defendant, Security Trust Company, a corporation, which is hereinafter designated as "appellee", qualified as executor and trustee under the provisions of the will and is acting as such trustee thereunder.

After the will had been probated in Ohio County, plaintiffs in this suit, who are the appellants in this Court and will be hereinafter designated as "appellants", contested the validity of the will in the Circuit Court of Ohio County on the issue of *devisavit vel non,* and the circuit court by a final decree upheld the validity of the will. Thereafter two applications for appeal and supersedeas were made to this Court, and were denied; and likewise a motion for a rehearing on the denial of the second application for an appeal and supersedeas was refused.

The original bill of complaint filed in this suit prayed that the whole of Item III of testator's will be declared void *ab initio,* and that Security Trust Company be enjoined from further administering the estate and trust provided for in testator's will. Based upon the allegations of the original bill of complaint, the appellants urged that there was a trust in the estate resulting to them, and to testator's other heirs and next of kin. Section 3 of Item III of testator's will provided for life annuities to the appellants and other heirs at law and next of kin of testator. In their original bill of complaint appellants sought to void *ab initio* their own annuities, as well as the perpetual trust provided for in Sections 4, 5, and 6 of Item III of the will.

Joint and separate demurrers were filed by Security Trust Company, executor and trustee as aforesaid, and

other appellees, which demurrers the trial court sustained on the sole ground that Section 7 of Item III of the will was valid, and appellants could not prosecute this suit, though the other sections of Item III of the will, in particular those which provided for a "perpetual trust for educational, scientific, religious, charitable or other public benevolent" purposes should fail.

The Circuit Court of Ohio County, on its own motion, certified its ruling on the demurrers to this Court, which certificate involved only the decision of the circuit court on the point of law: "(1) That Section 7 of Item III of the Last Will and Testament of Harry S. Sands, deceased, is enforceable and valid, and under said Section the Trustees of the Diocese of the Protestant Episcopal Church in West Virginia are the residuary beneficiaries of the Estate in the event of the failure of the perpetual charitable trust otherwise established in said will and that, as the parties plaintiff cannot participate in any distribution of the trust corpus and cannot benefit by a construction of the said Last Will and Testament of Harry S. Sands, deceased, they have no interest in the subject matter of this suit, no standing in this Court, and no right to maintain this suit."

This Court refused to docket the certification by order entered on February 13, 1956.

Some time after the refusal of this Court to docket the certified case, appellants tendered and filed in the Circuit Court of Ohio County an amended and supplemental bill of complaint, in which they prayed for the same relief they had prayed for in their original bill of complaint. In the amended and supplemental bill of complaint, however, the theory advanced in the original bill of complaint to the effect that the allegedly charitable perpetual trust provided for in testator's will was void *ab initio* was abandoned; and the appellants do not in this Court contend that their annuities are void *ab initio;* in fact, appellants failed to attack the validity of these annuities in any manner.

The appellees, who are the defendants impleaded in the original bill of complaint, as well as the other defendants impleaded in the amended and supplemental bill of complaint, filed separate demurrers to the amended and supplemental bill of complaint, which demurrers were sustained by the circuit court, and appellants' amended and supplemental bill of complaint was dismissed.

From a careful reading of this record, it appears that the Circuit Court of Ohio County, in sustaining the demurrers to the amended and supplemental bill of complaint, held that Section 7 of Item III of the Last Will and Testament under consideration is valid; and, therefore, the Diocesan Trustees of the Protestant Episcopal Church of the Diocese in West Virginia, the named beneficiaries in Section 7 of Item III of testator's Last Will and Testament, would take in the event the perpetual trust set forth in the preceding sections of Item III should be void.

This appeal is prosecuted to a final decree of the Circuit Court of Ohio County in sustaining the demurrers to the amended and supplemental bill of complaint and dismissing such amended and supplemental bill of complaint.

In the consideration of this case, the pertinent provisions of the will are embraced in Sections 1, 2, 3, 4, 5, 6, and 7 of Item III of testator's will and read as follows:

"ITEM III: Section 1. All the rest, residue and remainder of my property, real and personal, of whatsoever kind or character or which I may own or have any interest in at the time of my death, I give, devise and bequeath to Security Trust Company, a West Virginia corporation, with its principal place of business in the City of Wheeling, Ohio County, West Virginia, or its successor,

"HARRY S. SANDS

IN TRUST, for the following uses and purposes:

"Section 2. Upon my death, I authorize and empower both my Trustee, in its sole discretion, and during the period of administration of my Estate, my Executor, in its sole discretion, either:

"(a) To continue to hold the stock of Sands Electric Company and to exercise the same powers of a stockholder therein, as I might do if living, or

"(b) To sell this stock, either at public or private sale, or

"(c) To vote for liquidation of the corporation.

"It is my wish that so long as Martha Sigenthaler Perry, Laura Jane Burda and J. Edwin Rehm desire and are capable of useful service that they be retained as employees of the Sands Electric Company.

"Section 3. To pay from the net income of said trust to the following persons for so long as each shall live, as follows:

"(a) To Mrs. Mamie Turner Busch, sister of my beloved wife, now residing at Aiken, South Carolina, the sum of Two Hundred Dollars ($200.00) per month, so long as she shall live;

"(b) To Dr. John F. Busch, son of Mrs. Mamie Turner Busch, now residing at Aiken South Carolina, the sum of Six Hundred Dollars ($600.00) per annum, so long as he shall live:

"(c) To Mrs. Helen Busch Mattison, daughter of the said Mrs. Mamie Turner Busch, now residing at Aiken, South Carolina, the sum of Six Hundred Dollars ($600.00) per annum, so long as she shall live;

"(d) To Mrs. Emily S. Hartman, now residing at Fairmont, West Virginia, the sum of Two Hundred Dollars ($200.00) per month, so long as she shall live;

"(e) To Oliver J. Sands, now residing at Richmond, Virginia, the sum of Six Hundred Dollars ($600.00) per annum, so long as he shall live; after the death of Oliver J. Sands, to his son, Oliver J. Sands, Jr., the sum of Six Hundred Dollars ($600.00) per annum, so long as he shall live;

"HARRY S. SANDS

"(f) To Mrs. Anna S. Showalter, now residing at Fairmont, West Virginia, the sum of Six

Hundred Dollars ($600.00) per annum, so long as she shall live;

" (g) To Mrs. Christine S. Sands, now residing at Millersville, Anna Arundel County, Maryland, the sum of Six Hundred Dollars ($600.00) per annum, so long as she shall live; after the death of Mrs. Christine S. Sands, to her three children, William H. Sands, Sprigg Sands and Rosemary Sands, the sum of Two Hundred Dollars ($200.00) per annum to each, for the periods of their respective lives;

" (h) To Dr. Joseph E. Sands, now residing at Rosemont, Pennsylvania, the sum of Six Hundred Dollars ($600.00) per annum, so long as he shall live;

" (i) To Mary Virginia Sands Paull, residing in Ohio County, West Virginia, the sum of One Hundred Dollars ($100.00) per month, so long as she shall live; after the death of Mary Virginia Sands Paull, the sum of Six Hundred Dollars ($600.00) per annum to Gene Paull Rankin, so long as she shall live.

"In case the said net income at any time is not sufficient to make in full all the payments provided, each of the above payment provisions shall be reduced proportionately so that the net income available shall be ratably distributed.

"Section 4. From the net income not expended as hereinbefore provided, which net income should increase gradually as payments of income hereinbefore provided terminate, my said Trustee is authorized and directed to make payments to the following institutions, so long as they exist but not to exceed payments for twenty (20) years or the equivalent sums:

" (a) To the Trustees of Saint Luke's Protestant Episcopal Church in the City of Wheeling, West Virginia, the sum of Six Hundred Dollars ($600.-00) per annum. My Trustee shall arrange for an appropriate tablet or marker to be placed in Saint Luke's Church in memory of my beloved wife, Helen Turner Sands.

"HARRY S. SANDS

"(b) To the Trustees of Saint Stephen's Protestant Episcopal Church in Anne Arundel County, Maryland, the sum of One Hundred Fifty Dollars ($150.00) per annum.

"(c) To the Trustees of Christ Protestant Episcopal Church in Fairmont, West Virginia, the sum of One Hundred Fifty Dollars ($150.00) per annum.

"Section 5. My Trustee shall devote my farm, Sandscrest, and adjoining property, solely to some educational, scientific, religious, charitable or other public benevolent use, or any combinations thereof, as it, in its absolute discretion may select, provided, however, that any religious use or uses shall be limited to those beneficiaries which are of, or, who adhere to the Reformed or Protestant Faith. In developing and perpetuating these purposes, my Trustee may use such amount of trust income as it may consider proper and which remains after satisfying the charges in Sections 3 and 4 of this Item. After all said charges have been paid or terminated, or if in the sole discretion of my Trustee, such charges are amply secured, my Trustee is authorized to invade the corpus to the extent it may consider proper in order to better accomplish the aforesaid public charitable or benevolent uses or any of them. If, in the judgment of my Trustee, the aforesaid uses or any of them, may best be accomplished by conveyance of said farm property, or any part thereof, to a public or non-profit corporation or organization created for or engaged in the same objects and purposes, my Trustee is authorized to convey all or any part of Sandscrest or ajoining property to such corporation or organization for so long as such corporation or organization engages in the aforesaid purposes or any of them. The name 'Sandscrest' shall be identified and continued with any of the aforesaid uses.

"In the event my Trustee should determine that it is not practical to use Sandscrest for any of the aforesaid purposes, my Trustee shall

"HARRY S. SANDS

thereupon sell it and invest the net proceeds thereof to produce income, which said income shall be expended by it exclusively in this State

and solely for the aforesaid educational, scientific, religious, charitable or other public benevolent uses or any of them. In addition to expending income for these purposes, my Trustee is authorized, in its absolute discretion, to expend exclusively in this State, any part of the principal for these purposes or any of them. Should my Trustee decide to sell Sandscrest, it may sell the same as an entire parcel or in divided parcels or my Trustee may develop all or any part thereof into a subdivision for the sale of home sites according to a general plan with suitable restrictions and, in order to finance reasonably necessary improvements for such a subdivision, my Trustee may use any income not required to pay and provide for the charges in Section 3 and 4 aforesaid and may borrow money which shall be repaid from the sale proceeds of such home cites. Any such subdivision shall retain the name 'Sandscrest.'

"Section 6. From the net income not expended as hereinbefore provided and, after payment of the charges set forth in Sections 3 and 4 aforesaid, the remainder of the corpus not hereinbefore disposed of, shall be held by my Trustee for the same public charitable or benevolent uses or use as are hereinbefore set out in Section 5 aforesaid with respect to my farm, Sandscrest, and adjoining property, to-wit: all such unexpended income and all income from the remainder of said corpus shall be expended by my Trustee, exclusively in this State, solely for some educational, scientific, religious, charitable or other public benevolent use or any combinations thereof. My Trustee, in its absolute discretion, shall select the particular uses or use except any religious uses or use shall be restricted to those beneficiaries which are of, or, who adhere to the Reformed

"HARRY S. SANDS

or Protestant Faith.

"In the event Sandscrest and adjoining property, or any part thereof, is sold, the aforesaid remainder of the trust corpus shall be added to the proceeds of such sale and the income of this combined corpus shall be expended solely by my Trustee for the aforesaid public charitable or benevolent uses or any of them. In addition to expending the aforesaid income, my Trustee is

authorized in its absolute discretion, to expend under the same conditions and limitations, any part of the corpus for the aforesaid public charitable or benevolent uses or any of them. This trust may be designated the Harry S. Sands Trust.

"In carrying out the provisions of Item III, my Trustee shall be vested with the same powers as I might exercise if living, it being my intent that it possess these broad powers in order that it may effectively and efficiently accomplish all of the aforesaid objects and purposes set out in said Item III.

"Section 7. Should my plan for a perpetual trust for educational, scientific, religious, charitable or other public benevolent uses fail for any reason, then and in that event the remaining corpus and any accumulations of income shall be distributed to the Trustee of the Diocese of the Protestant Episcopal Church in West Virginia for use exclusively in this State, after payment of the charges set forth in Sections 3 and 4 aforesaid."

The appellee, Security Trust Company as executor and trustee of the Last Will and Testament of Harry S. Sands, contends that the validity of the perpetual trust, allegedly created by Item III of the will, is not in issue on this record, and that the validity of Section 7 of Item III of the will presents the only issue before this Court for determination.

Likewise the brief filed on behalf of the Diocesan Trustees of the Protestant Episcopal Church of the Diocese in West Virginia asserts that the sole issue before this Court is whether the Circuit Court of Ohio County erred in sustaining the several demurrers to the original and amended and supplemental bills of complaint by determining that Section 7 of Item III is a valid alternative, or "safety" disposition of the residuary estate, and appellants are without standing in court.

In the recent case of *Goetz* v. *Old National Bank, etc., et al.,* 140 W. Va. 422, 84 S. E. 2d 759, this Court was dealing with a residuary clause, which in point 3 of the syllabus the Court held created a mixed trust, which is

void. The residuary clause of the Goetz will reads: "All the rest, residue and remainder of my estate of every kind and character, wheresoever the same may be situated, real, personal and mixed, of which I shall die seised and possessed, or to which I may in any manner be entitled, I give and bequeath unto The National Bank of Washington, a National bank having its principal place of business in the District of Columbia, and the Old National Bank of Martinsburg, a National Bank having its principal place of business in the City of Martinsburg, State of W. Va., their and each of their successors and assigns, to distribute and pay over the same unto such religious, charitable, scientific, literary, educational, or fraternal corporations and associations, as they may, in their discretion select and determine, it being my request, however, that they shall select only such institutions as are located within the United States. In connection with any such corporation, organization or institution, said Executors are hereby given discretion as to the terms and conditions upon which such distribution is to be made, that is to say, whether absolutely and in fee simple, or upon conditions by them imposed."

This Court in the *Goetz* case having held that the residuary bequest was void, the plaintiffs in that case, who were the next of kin of testator, *ex necessitate* were the only persons entitled to take under the holding of this Court, and, therefore, were proper parties plaintiff in a suit brought by them to construe the provisions of that will. However, it is to be noted in the Goetz will that there was no "saving" clause, such as is contained in Section 7 of the Item III of the Sands will.

We are, therefore, brought initially to a consideration whether Section 7 of Item III of the Sands will effectively disposes of the residuum of the estate, in the event the perpetual trust set forth in the earlier sections of Item III should fail.

As the circuit court did not pass upon the validity of the perpetual trust, attempted to be provided for in Item

III of the Sands will, this Court will not in the first instance attempt to do so. In point 4 of the syllabus in *Bell* v. *Wayne United Gas Co., et al.,* 116 W. Va. 280, 181 S. E. 609, this Court held that this Court will not review nonjurisdictional questions which have not been decided by the trial court. *Cameron* v. *Cameron,* 105 W. Va. 621, 143 S. E. 349. See also: *Woods, Special Commissioner* v. *Campbell et al.,* 45 W. Va. 203, 32 S. E. 208; *Kesler* v. *Lapham et al.,* 46 W. Va. 293, 33 S. E. 289; *Nuzum* v. *Nuzum,* 77 W. Va. 202, 87 S. E. 463; *Davis* v. *Davis Trust Co.,* 113 W. Va. 43, 166 S. E. 690; *Vecellio* v. *Bopst,* 121 W. Va. 562, 6 S. E. 2d 708.

It is unnecessary for us to consider the many cases decided by this Court and by the Supreme Court of Appeals of Virginia, if Section 7 of Item III of the Sands will effectively disposes of the residuum of the estate in the event that the purported perpetual trust is invalid. We say this, not only because there is a presumption in the law governing the construction of wills that a will should be construed so as to prevent intestacy, 20 M. J., Wills, Section 122, but because if Section 7 of Item III of the Sands will is valid, the testator's will effectively and expressly provided against intestacy.

The perpetual trust, which the testator evidently intended to establish in Item III of the will, if valid, vested immediately upon the probate of the will, as it is not governed by any condition precedent to such vesting. Such trust is not invalidated by the rule against perpetuities on the ground that the trustee will not execute the trust within a reasonable time. *Eary* v. *Raines,* 73 W. Va. 513, 80 S. E. 806; *Cooper's Estate,* 150 Pa. 576. If such purported trust is valid, the appellants have no status in a court of equity. *First Nat. Bank of Huntington* v. *Cook,* 55 W. Va. 220, 46 S. E. 1027; *Skeen Adm'r.* v. *Parsons,* 94 W. Va. 584, 119 S. E. 681; *Richardson, Admrs.* v. *Hardman,* 97 W. Va. 573, 125 S. E. 442; and *Roberts* v. *Gruber,* 74 W. Va. 550, 82 S. E. 367.

If, however, the purported perpetual trust is invalid,

such invalidity occurs *eo instante* with the probate of testator's will, and, by the same token, Section 7 of Item III of the will, containing the ultimate remainder or safety clause, was caused to operate with the probate of the will, in which event the appellants cannot, under the last-mentioned authorities, prevail in this suit.

In *Goetz v. Old National Bank of Martinsburg, supra,* this Court said: "Courts, in construing wills, have resorted to presumption: (1) That there is presumption against intestacy; (2) there is presumption against disinherison of an heir." Resort need not be had to presumption against intestacy, as Section 7 of Item III of the will provides against intestacy, and Section 7, if valid, in express terms overrides the presumption against disinherison of an heir.

We are well aware of the early decision of the Supreme Court of Virginia in *Gallego's Executors v. Attorney General,* 3 Leigh (30 Va.) 450, 24 Am. Dec. 650, and the approval thereof in *Vidal v. Girard's Executors,* 2 How. 128, 11 L. ed. 205, as well as the overruling of the decision in *Gallego's Executors v. Attorney General, supra,* in *Trustees of General Assembly of the Presbyterian Church of the United States v. Guthrie,* 86 Va. 125, 10 S. E. 318, 6 L. R. A. 321.

The incorporation in the statutory law of this State of Code, 35-1-7, has served to take away all inhibitions against the devolution of property by will or deed for religious purposes, which may have prevailed in the earlier decisions in the Courts of Virginia and in the Supreme Court of the United States.

Section 7 of the statute is remedial and curative in its nature. This section of the Code speaks authoritatively, and serves to abrogate the old rule which prevailed in the Virginias governing the conveyance, devise and bequest of property to religious organizations. Section 7 of the statute specifically provides, in part, that: "The trustee or trustees of any church, religious sect, society or denomination, or of any individual church, parish, congregation or branch, within this State, shall have power to receive

donations, gifts and bequests of personal property, and, subject to the limitations of section eight of this article, to take by devise, conveyance or dedication or to purchase and to hold, real property, in trust for such church, religious sect, society or denomination, or for any individual church, parish, congregation or branch; * * *". This section of the Code is sufficiently broad in its terms to permit any person or persons, whether specifically designated in a will or deed of conveyance as trustee or trustees, to be in fact trustee or trustees, who under the policy or constitution of any diocese, synod, religious congregation, parish or individual church are authorized to take and hold property for religious purposes under deed and will, and they may do so under the provisions of the statute.

As the provisions of Item III of the Sands will, which purport to set up a perpetual trust contain no defeasance clause, the perpetual trust was operative and valid at the time the will was probated, or, if invalid, the trust failed *eo instante* with the probate of the will. Thus Section 7 of Item III of the Sands will left no room for intestacy or for remote vesting, and assuming, as the circuit court did, that the purported perpetual trust set forth in Item III is void *ab initio,* Section 7 of Item III was caused to operate and vest in the Diocesan Trustees of the Protestant Episcopal Church of the Diocese in West Virginia.

For the foregoing reasons we are of opinion that the trial chancellor did not err in sustaining the demurrers to the original and amended and supplemental bills of complaint and dismissing the bills of complaint on the ground that the appellants by their pleadings have not established a justiciable right in this suit in equity. We therefore affirm the decree of the Circuit Court of Ohio County.

*Rulings affirmed.*