IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

JANUARY 2018 Term

No. 17-0432

**FILED**

**May 23, 2018**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

L&D INVESTMENTS, INC., A WEST VIRGINIA CORPORATION;
RICHARD SNOWDEN ANDREWS, JR.;
MARION A. YOUNG TRUST; AND
CHARLES A. YOUNG, DAVID L. YOUNG, AND
LAVINIA YOUNG DAVIS, SUCCESSORS OF
MARION A. YOUNG TRUST,
Plaintiffs Below, Petitioners

v.

MIKE ROSS, INC., AND
ANTERO RESOURCES CORPORATION,
Defendants Below, Respondents

AND

No. 17-0325

ROBERT HITZELBERGER,
Defendant Below, Petitioner

v.

MIKE ROSS, INC.,
Defendant Below, Respondent

and

L&D INVESTMENTS, INC., A WEST VIRGINIA CORPORATION;
RICHARD SNOWDEN ANDREWS, JR.; MARION A. YOUNG TRUST;
CHARLES A. YOUNG, DAVID L. YOUNG, AND LAVINIA YOUNG DAVIS,
SUCCESSORS OF MARION A. YOUNG TRUST,
Plaintiffs Below, Respondents

---

Appeals from the Circuit Court of Harrison County
Honorable Thomas A. Bedell, Judge
Civil Action Nos. 13-C-528 & 13-C-528-2

REVERSED AND REMANDED

---

Submitted: February 13, 2018
Filed: May 22, 2018

David J. Romano, Esq.                         Robert Louis Shuman, Esq.
Brandon D. Cole, Esq.                         Reeder & Shuman
Romano Law Office                             Morgantown, West Virginia
Clarksburg, West Virginia                     and
Attorneys for L&D Investments, Inc.,          Loren B. Howley, Esq.
    Richard Snowden Andrews, Jr.,             Grantsville, West Virginia
    Marion A. Young Trust,                    Attorneys for Mike Ross, Inc.
    Charles A. Young, David L. Young,
    and Lavinia Young Davis

Nicholas S. Preservati, Esq.                  W. Henry Lawrence, Esq.
Kelly G. Pawlowski, Esq.                      Amy M. Smith, Esq.
Spilman, Thomas & Battle, PLLC                Amber M. Moore, Esq.
Charleston, West Virginia                     Shaina D. Massie, Esq.
Attorneys for Robert Hitzelberger            Steptoe & Johnson PLLC
                                              Bridgeport, West Virginia
                                              Attorneys for Antero Resources Corp.

JUSTICE LOUGHRY delivered the Opinion of the Court.

# SYLLABUS BY THE COURT

1.  "The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed." Syl. Pt. 1, *Wickland v. Am. Travellers Life Ins. Co.*, 204 W.Va. 430, 513 S.E.2d 657 (1998).

2.  "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

3.  "In case of two assessments of the same land under the same claim of title for any year, one payment of taxes under either assessment is all the state can require." Syl. Pt. 2, *State v. Allen*, 65 W.Va. 335, 64 S.E. 140 (1909).

4.  "'"This Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance." Syllabus Point 2, *Sands v. Security Trust Co.*, 143 W.Va. 522, 102 S.E.2d 733 (1958).' Syllabus Point 2, *Duquesne Light Co. v. State Tax Department*, 174 W.Va. 506, 327 S.E.2d 683 (1984), *cert. denied*, 471 U.S.

i

1029, 105 S.Ct. 2040, 85 L.Ed.2d 322 (1985)."  Syl. Pt. 4, *State ex rel. State Line Sparkler of W.Va. v. Teach*, 187 W.Va. 271, 418 S.E.2d 585 (1992).

LOUGHRY, Justice:

This case is before this Court upon consolidated appeals from an "Omnibus Order" entered by the Circuit Court of Harrison County on February 21, 2017, granting summary judgment to the respondent, Mike Ross, Inc. ("MRI") and an April 5, 2017, order whereby the circuit court refused to alter or amend its grant of summary judgment.[1] Through its Omnibus Order, the circuit court declared MRI to be the owner of eighty percent of the oil and gas interests in two adjacent tracts of land in Harrison County pursuant to a 2003 tax deed issued to MRI after it purchased the subject property at a delinquent tax sale. In the appeal identified by Docket No. 17-0432, petitioners L&D Investments, Inc.; Richard Snowden Andrews, Jr.; the Marion A. Young Trust; and Charles A. Young, David L. Young, and Lavinia Young Davis, successors of the Marion A. Young Trust (hereinafter collectively "L&D"),[2] contend the circuit court erred by not finding that they collectively own a 16.44 percent undivided interest in the oil and gas in the subject properties. In the appeal identified by Docket No. 17-0325, petitioner Robert Hitzelberger claims ownership of an undivided twenty percent interest in the oil and gas separate from L&D. In both cases, the petitioners

---

[1]By order dated January 3, 2018, the appeals were consolidated by this Court for purposes of oral argument, consideration, and decision.

[2]We use "L&D" to refer to all petitioners in the appeal identified as Docket No. 17-0432. When discussing the separate claims of L&D Investments, Inc., we will refer to it as "L&D Investments." Finally, we use the term "petitioners" to refer to all petitioners in both appeals.

1

assert that they paid real property taxes on their oil and gas interests before and after the

delinquent tax sale and that their payment of the taxes renders the tax deed issued to MRI

void. Alternatively, the petitioners argue that the tax deed issued to MRI should be set aside

because MRI failed to give them notice of the right to redeem as required by the delinquent

tax sale statutes.[3] L&D Investments further argues the circuit court erred by declaring its

claim against respondent Antero Resources Corporation ("Antero") relating to the pooling

of the oil and gas under certain properties moot. In granting summary judgment to MRI, the

circuit court found that the petitioners' claims were barred by the three-year statute of

limitation set forth in West Virginia Code § 11A-4-4 (1994).[4]


Having considered the parties' briefs and arguments, the submitted appendix

records, and pertinent authorities, we find that the tax deed issued to MRI is void and the

statute of limitation is inapplicable. Accordingly, we reverse the circuit court's orders and

remand this case for further proceedings consistent with this opinion.


## I. Factual and Procedural Background

At issue in this case is the present ownership of the oil and gas interests in two

adjacent tracts of land, totaling approximately 1,041 acres, located on "Middle Fork of

---

[3]*See* W.Va. Code §§ 11A-3-19 (2010) and 11A-3-21 (2010) (setting forth what purchaser must do to secure deed and notice to redeem).

[4]*See* note 16, *infra.*

Sycamore Creek in the Union District of Harrison County." The oil and gas interests were severed from the surface and coal interests in 1903. Prior to the severance, Charles Lee Andrews held fee simple title to the two tracts as trustee for the benefit of his mother, Mary Catherine Lee Andrews. By deed dated April 4, 1903, Charles Lee Andrews, as trustee, conveyed the surface and coal interests to Jonathan D. Springer. Charles Lee Andrews excepted and reserved the oil and gas interests from that conveyance.[5] As trustee for his mother, Charles Lee Andrews retained title to the oil and gas interests until her death on March 2, 1920. Pursuant to Ms. Andrews' will and its five codicils, the oil and gas interests were divided among her surviving children and grandchildren as follows: an undivided one-fifth interest (twenty percent) was devised to each of her four children: Charles Lee Andrews, Louisa Lee Andrews (Bacon Eldridge), Carolyn Snowden Andrews (Fahenstock), and George Snowden Andrews. The remaining undivided one-fifth interest was split evenly among her decedent daughter's three children: Rosalie Tunstall Smith (Forster Cooper), Anita Tunstall Smith, and Marion Tunstall Smith.

In the years that followed, the oil and gas interests were further divided among the heirs of Ms. Andrews's children and grandchildren. Petitioner Richard Snowden Andrews, Jr., inherited his interest from his father Richard Snowden Andrews who received

---

[5]Charles Lee Andrews, as trustee for Mary Catherine Lee Andrews, leased the oil and gas to Southern Oil Company through an agreement executed on July 14, 1902. The property has remained in production since that time.

his interest from his father, Charles Lee Andrews, and uncle, George Snowden Andrews. The interest held by the Marion A. Young Trust and its successors was also inherited from Richard Snowden Andrews. The interests claimed by L&D Investments were purchased from siblings, Deborah Lee Tschappat and Michael Tschappat.[6] The purchases were perfected by separate quit claims deeds that were recorded in Harrison County on March 15, 2013. Collectively, L&D claims a 16.44 percent undivided interest in the oil and gas.

Petitioner Robert Hitzelberger claims ownership of the twenty percent undivided interest in the oil and gas that was originally bequeathed to Carolyn Snowden Andrews Fahnestock. The record indicates that Carolyn Fahnestock died on October 18, 1937, in Rhode Island, where her will was probated. Her will and codicils were recorded in the Harrison County Clerk's office on July 28, 1986. Pursuant to the will and codicils of Carolyn Fahnestock, the executors of her estate, who were her children, conveyed her twenty percent oil and gas interest to Harry Parsons Cross by deed dated December 1, 1949.[7] Harry

---

[6]Deborah and Michael Tschappat inherited their oil and gas interests from their mother Catherine Lee Tschappat, a resident of New Jersey, who died intestate on October 14, 2011. Catherine Tschappatt was the daughter of Rosalie Forster Cooper (aka Rosalie Tunstall Smith), who bequeathed her interest to her three children: Catherine, John Forster Cooper, and Anthony Forster Cooper. When she died on April 29, 1965, Rosalie Forster Cooper owned the 1/15 interest she inherited from her grandmother, and an additional 2/75 interest that she inherited from her sister, Anita Tunstall Smith.

[7]The original deed has never been recorded in Harrison County; the only proof of the conveyance is an uncertified copy of the original deed that was recorded in the Miscellaneous Books in the Harrison's County Clerk's office on August 13, 2014.

Parsons Cross died testate in 1955 in Rhode Island. Pursuant to the terms of his will, which was recorded in the Harrison County Clerk's Office in 1986, his interest was devised to a testamentary trust known as the Cross Trust. On January 18, 1999, an instrument titled "Assignment and Conveyance" dated December 18, 1998, was recorded in the Harrison County Clerk's Office. This instrument conveyed all the interests in the oil and gas in the subject property that was owned by the Cross Trust to Mr. Hitzelberger.

Although Charles Lee Andrews died in 1946, and the interests in the oil and gas were conveyed or inherited by several different individuals over the years, a real property tax assessment for one hundred percent of the oil and gas interests remained solely in the name of Charles Lee Andrews until 1999.[8] In other words, all fractional interests in the oil and gas were on the Harrison County landbooks as a single entry in the name of "Andrews, Charles Lee," which the parties refer to as the "master assessment." However, additional assessments were added on the landbooks of Harrison County beginning in 1988 with a new entry in the name of the "Harry P. Cross Estate," which described 1000 acres oil and gas on Sycamore and referenced a Consolidated lease or well. According to deposition testimony from a staff member of the Harrison County Assessor's office, the mineral interest had been

[8]It has long been recognized that "[a]n assessment does not have to be in the names of all the persons interested in the property assessed." *Bennett v. Greer Gas Coal Co.*, 127 W.Va. 184, 190, 32 S.E.2d 51, 55 (1944); *see also* W.Va. Code § 11-4-9 (1935) (providing that owners of undivided interest in land may have their interests entered on land books in one owner's name or separately and independently of other owners).

5

previously assessed on the personal property books rather than the landbooks and was made

based on a gas producer's report of income paid to the Harry P. Cross Estate from production

of the oil and gas. New landbook assessments were made in 1990 for "Richard Andrews,

Agent" of ".0764% Int. 150 Ac *leased* O & G (Alamco) A-774;" "Andrews, Richard

Snowden Hrs." of " Int. *leased* O&G Eastern American (8243 C Andrews); and "Saunders,

Phyllis Fletcher" of "0.2244 Int. 271.67 *as leased* O&G Sycamore (CNG Dev 2088).[9] In

1991, the Assessor created a new entry on the landbooks in the name of "Catherine T.

Schappat," which surname was corrected to Tschappat in 1993. This entry, like the others,

was based on a gas producer's report of income. The deposition testimony indicated that

these entries were made at the direction of the Property Tax Division of the West Virginia

State Tax Department. The record in this case includes a letter written on November 7, 1988,

by the Director of the Property Tax Division in the State Tax Department concerning "the

reworking of oil and gas royalty owners (real estate) from the personal to the real property

books." The letter indicated that "every effort should be made to convert the personal

property account to the (corresponding) real estate entry" but "[i]f all efforts fail in matching

a personal record with a real estate entry, enter that personal property record as a separate

---

[9]The record indicates that Phyllis Fletcher Sauders is the daughter of Frances Andrews who was the wife of Richard Snowden Andrews. Frances Andrews also inherited part of her husband's oil and gas interests. Specifically, the record indicates that at his death, Richard Snowden Andrews had a twenty percent interest in the oil and gas, which he bequeathed in nine equal shares: three shares to Frances Andrews, four shares to Richard Snowden Andrews, Jr., and two shares to Marion Andrews Young.

assessment on the land book in its proper alphabetical sequence."[10]  As a result of these entries, real property tax tickets were generated and were paid by the petitioners or their predecessors-in-title.  At the same time, the "master assessment" in the name of "Andrews, Charles Lee" also resulted in the issuance of a tax ticket which was paid each year through 1999.

In 1999, Emmi Wyatt, H. R. Thurber Jr., Richard S. Thurber, and Edythe T. Donovan, each claiming an undivided one-twentieth (five percent) interest in the property[11] requested separation of their respective interests in the subject property from the "master assessment" in the name of "Andrews, Charles Lee."  Thereafter, these individuals paid and have continued to pay the tax assessments on their respective shares.  However, the "master assessment" for the year of 2000, in the name of "Andrews, Charles Lee," was not paid and became delinquent.  Because of the delinquency, a tax lien on the property in the name of "Andrews, Charles Lee," assessed as an eighty percent undivided interest in the oil and gas, was sold at a delinquent tax sale to MRI in 2001.  In 2003, a tax sale deed was issued to MRI, which conveyed an eighty percent interest in the oil and gas.

[10]The letter explained that "West Virginia Code § 11-4-9 requires owners of any estate in land, including minerals, be entered upon the land book of the county."

[11]Emmi Wyatt, H.R. Thurber, Jr., Richard S. Thurber and Edythe T. Donovan inherited their interests from their mother, Carolyn Thurber Cooley, who was the daughter of Charles Lee Andrews.  Carolyn Thurber Cooley had a twenty percent interest in the oil and gas at her death as a result of inheritances from her father and her uncle, George Snowden Andrews.

7

After L&D Investments purchased the oil and gas interests of the Tschappat siblings in 2013, it notified the entities that were extracting the oil and gas from the property of the purchases and its right to receive any royalty payments. L&D Investments was then informed by the gas producers that the interests it claimed to have purchased had been sold for delinquent taxes to MRI in 2001. On December 10, 2013, L&D Investments filed this action for declaratory relief and to quiet title to its undivided oil and gas interest in the subject properties. The action named MRI, Antero Resources Corporation, Consol Energy, CNX Gas Company, and Robert Hitzelberger as defendants.

In its complaint, L&D Investments asserted that CNX, Consol, and Antero were extracting oil and gas from the property and had refused L&D Investments's request for the royalty payments because of the alleged ownership of the oil and gas interests by MRI. L&D Investments also sought declaratory relief from Antero "regarding other Harrison County properties owned by [L&D Investments] and which this Defendant has acted in an unlawful manner by drilling and producing on Plaintiff's mineral interests without Plaintiff's consent to pooling, or by otherwise acting in a unilateral manner without authority[.]" The complaint further alleged that Robert Hitzelberger also claimed to be the owner of a portion of the eighty percent mineral interests at issue.

Through an amended complaint,[12] L&D Investments sought "additional declaratory relief from Defendant Antero regarding those certain mineral parcels owned by Plaintiff which Defendant has drilled without Plaintiff's consent, as part of Antero's Asbury Unit which is a pooled unit of mineral properties." The amended complaint further alleged that "Plaintiff was offered certain financial benefits to entice it to allow 'pooling' but before such negotiations could be completed, Defendant Antero unilaterally included Plaintiff's property in the 'pool' and began drilling." These allegations were made with regard to "Plaintiff's ownership interest in the 'pooled' Unit [described as] a 1/6 interest in 72 acres in Harrison County."

Subsequently, MRI filed a cross-claim against Mr. Hitzelberger asserting that it had acquired his oil and gas interests in the property through the tax sale. In his answer to the cross-claim, Mr. Hitzelberger maintained that he owned a twenty percent interest in the oil and gas separate from L&D's interests.

The parties engaged in extensive discovery which culminated with the filing of ten motions for summary judgment. In its lengthy "Omnibus Order" entered on February 21, 2017, the circuit court identified the central issue in the case as "the determination of the present ownership of the oil and gas in two adjacent tracts of land." Ultimately, the circuit

---

[12]The other parties in this case were joined through amended complaints.

court found that the petitioners had "failed to do what was required and necessary in order to have their respective oil and mineral parcel interests underlying the related real estate tracts separately assessed or pay the delinquent taxes on the account that included their interests" and "having neglected to so, their respective ownership interests were legitimately sold out from under them." The court further found that the three-year statute of limitation on challenges to tax deeds set forth in West Virginia Code § 11A-4-4(a)[13] barred the petitioners' claims. Accordingly, the circuit court entered summary judgment in favor of MRI and declared it the owner of eighty percent of the oil and gas interests in the two tracts. Having found in favor of MRI, the circuit court further concluded that L&D Investments's claims against Antero were moot. Subsequently, L&D filed a motion to alter or amend the grant of summary judgment to MRI, which was denied by the order entered on April 5, 2017. These appeals followed.

## II. Standard of Review

Mr. Hitzelberger appeals the February 21, 2017, summary judgment order. L&D appeals the April 5, 2017, order denying its motion to alter or amend the February 21, 2017, summary judgment order. We have held that: "The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the

---

[13]*See* note 16, *infra*.

10

motion is based and from which the appeal to this Court is filed." Syl. Pt. 1, *Wickland v. Am. Travellers Life Ins. Co.*, 204 W.Va. 430, 513 S.E.2d 657 (1998).  With respect to a grant of summary judgment, our standard of review is well-established:  "A circuit court's entry of summary judgment is reviewed *de novo*."  Syl. Pt. 1,  *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).  With this standard in mind, we consider the parties' arguments.

## III.  Discussion

The primary issue in both appeals is the present ownership of the oil and gas interests in the subject two parcels of property.   Upon resolution of that issue, we will consider L&D Investments's contentions with respect to its claim against Antero for "unauthorized" pooling.

### *A.  Ownership of the Oil and Gas Interests*

The parties in this case dispute the validity of the tax deed issued to MRI in 2003.  By that deed, MRI claims an eighty percent interest in the oil and gas in the subject properties.  In this appeal, L&D and Mr. Hitzelberger contend that they collectively have a 36.44 percent interest in the oil and gas because they and their predecessors-in-title have continuously paid the real property tax tickets issued to them by the Harrison County Assessor.  They maintain the taxes were never delinquent and argue that MRI's tax deed is void.

11

This is the third appeal to this Court from Harrison County stemming from the creation of duplicate assessments of certain mineral estates by the Harrison County Assessor beginning in the 1980s. Like the case at bar, *Haynes v. Antero Resources Corp.*, No. 15-1203, 2016 WL 6542734 (W.Va. Oct. 28, 2016) (memorandum decision), and *Hill v. Lone Pine Operating Co.*, No. 16-0219, 2016 WL 6819787 (W.Va. Nov. 18, 2016) (memorandum decision), concerned the sale of mineral interests in property for delinquent taxes when, in fact, taxes had been paid. Accordingly, we begin our analysis by reviewing our decisions in those cases.[14]

In *Haynes,* the subject mineral estate originally belonged to the respondent's grandfather. Upon his death, the mineral interests were divided into eight shares, one of which was bequeathed to the respondent's father. At his death, the respondent's father's share was divided among his three children, subject to his widow's life estate. From 1960 through 1987, the Harrison County Assessor assessed the property on one tax ticket in the name of the widow. However, in 1988, three additional property tax assessments were made with regard to the subject mineral interests, one in the respondent's name and the other two

---

[14]Neither *Haynes* nor *Lone Pine* were addressed by the circuit court in its decision. "Reaffirm[ing] the precedential value of our memorandum decisions," we recently reiterated: "'there is no question that memorandum decisions are pronouncements on the merits that fully comply with the constitutional requirements to address every point fairly arising upon the record and to state the reasons for the decision concisely in writing.'" *In re T.O.*, 238 W.Va. 455, 463, 796 S.E.2d 564, 572 (2017) (quoting *State v. McKinley*, 234 W.Va. 143, 151, 764 S.E.2d 303, 311 (2014).

12

in his siblings' names. The respondent's siblings paid their tax tickets generated from those assessments. The widow also continued to pay her tax ticket. However, in 1994, the respondent's 1/240th interest was sold at a delinquent tax sale because he never paid his tax ticket. That interest was purchased by the petitioner's father and was later devised to the petitioner. In 2014, when a gas producer paid royalties to the respondent, the petitioner filed a declaratory judgment action concerning ownership of the 1/240th interest. Upon review, we agreed with the circuit court's finding "that the taxes assessed against the widow's 1/80th interest and the taxes assessed against the respondent's 1/240th interest was a *double assessment*." *Id.* at *3.

Finding in favor of the respondent in *Haynes*, we reaffirmed this Court's long standing decisions in *State v. Low,* 46 W.Va. 451, 33 S.E. 271 (1899) and *State v. Allen*, 65 W.Va. 335, 64 S.E. 140 (1909). In *Low,* this Court explained that "when the same land is charged by the assessor with taxes in the name of the grantor and his grantee, and taxes paid by the grantee, if the land is sold for the nonpayment of taxes assessed against the grantor the purchaser at such sale acquires no title." *Id.* at 459, 33 S.E. at 274 (citation omitted). In other words, "[p]ayment by the owner, or any one entitled to make it, is an absolute defeat and termination of any statutory power to sell." *Id.* (quotations and citation omitted).

13

Subsequently, in syllabus point two of *Allen*, this Court made clear that "[i]n case of two assessments of the same land under the same claim of title for any year, one payment of taxes under either assessment is all the state can require." 65 W.Va. at 335, 64 S.E. at 140. In so holding, this Court explained:

> By proceeding to sell land for nonpayment of taxes, the state is simply proceeding to enforce its lien on the land for those taxes. If the taxes have in fact been received by the state, even upon some other assessment of the same land, which it has made or at least recognized by receipt of taxes thereunder, the lien has been relinquished. And where there is no lien there can be no valid sale.

*Id.* at 339, 64 S.E. at 142.

The respondent in *Haynes* "was assessed for the same interest under the same claim to title" as his father's widow, resulting in a double assessment. *Haynes* at *5. Although the respondent did not pay his tax ticket, payment was made by his father's widow. *Id.* Accordingly, pursuant to the principles set forth in *Low* and *Allen*, we affirmed the circuit court's conclusion that the "taxes were never delinquent and, therefore, the tax sale of Respondent Southern's interest in the subject mineral was void as a matter of law." *Haynes* at *5.

A similar fact pattern was present in *Lone Pine*. The property at issue in that case was the oil and gas interests in approximately 364 acres in Harrison County that were

14

part of a tract of 1,300 acres that had been leased for production since 1899. In 1988, the Harrison County Assessor created duplicate assessments for the mineral interests in the names of William L. Mitchell, Suzan Sigmond, and Genevieve Rapp, based upon production reports "because the assessor was not able to match the 1,300 acres leased with the actual 376 ½ acres mineral assessments." *Id.* at *2. In 1989, Mitchell received the tax assessment for the entire oil and gas interest which he paid. However, Mitchell did not pay the duplicate assessment in his name or that of Rapp, his aunt, whose interest he had inherited. The mineral interests on the duplicate assessments in the names of Mitchell and Rapp were eventually acquired by the petitioners through a delinquent tax sale resulting in a tax deed issued to them in 1994. In 2010, Mitchell, who was unaware of the delinquent tax sale, sold the same interests to Lone Pine Operating Company, which also obtained Sigmond's interest. In 2011, the petitioners filed suit against Lone Pine seeking to quiet title and obtain distribution of the oil and gas royalties. *Id.* The circuit court granted summary judgment to Lone Pine, and we affirmed that decision upon appeal because there was "no dispute that all taxes had been paid on the two Mitchell assessments as to the 376 ½ [sic] acres of oil and gas for all periods through 2010 when they were sold to respondent [Lone Pine]." *Id.* at *3.

Based upon this precedent, L&D contends that the taxes with respect to their oil and gas interests were never delinquent because they and their predecessors-in-title paid and continued to pay the tax tickets they received from the Harrison County Assessor.

15

Likewise, Mr. Hitzelberger contends that his interest was never delinquent because he also paid the tax tickets he received from the Harrison County Assessor. In other words, the petitioners maintain that the delinquent taxpayer's interest was not subject to sale because taxes had, in fact, been paid through these other separate assessments of the same property for the same year. Accordingly, the petitioners reason that the deed issued to MRI is void.

Conversely, MRI argues that payments made by the petitioners were for erroneous assessments of royalty-based personal property rather than assessments of real property interests and were improperly placed on the Harrison County landbooks. As such, MRI contends the petitioners' payment of the tax tickets issued by the Assessor does not render its tax deed void. MRI maintains that *Lone Pine* supports its position because this Court cited with approval the circuit court's finding

> that the duplicative 'Leased' assessments, purchased by petitioners [did] not, and ha[d] never, represented the ownership of any interest in property, minerals or oil and gas. Because the duplicative 'Leased' assessments did not represent any interest in the oil and gas or other minerals, and because Mitchell paid the tax in full on the actual 376 ½ [acre] mineral assessments, the sale by [the Deputy Commissioner of Forfeit[ed] and Delinquent Lands] to [p]etitioners did not convey any ownership interest to [p]etitioners and did not divest William Mitchell, Jr. from his rightful ownership interest in the oil and gas.

*Id.* at *3. Recognizing that "the scenario is reversed" in the present case, MRI, nonetheless, argues that "[i]f the sale of a lien securing taxes owed on a 'royalty-based tax' assessment does not convey an ownership interest in the oil and gas in place, then likewise, the payment

of taxes owed on a 'royalty-based tax' assessment does not protect against the sale of the lien securing taxes owed on an assessment of the oil and gas in place." In making this argument, MRI fails to appreciate a critical distinction between the petitioners in *Lone Pine* and the petitioners in the appeals at bar.

The only basis for the petitioners in *Lone Pine* to claim ownership of the oil and gas interests was the purchase of the tax lien that resulted from the nonpayment of the duplicate assessment by respondent Mitchell. The same was true with respect to the petitioners in *Haynes*. In the instant case, however, the petitioners claim ownership of the oil and gas interests through a chain of title from the original fee owner, Mary Catherine Andrews. In other words, petitioners claim title to the mineral interests through deeds, wills and conveyances, not the mere purchase of a lien at a tax sale.[15] Moreover, the petitioners

---

[15]During the proceedings below, MRI did not challenge L&D's chain of title documents demonstrating their ownership of undivided interests in the oil and gas. MRI did assert, however, that a deed and a conveyance instrument submitted by Mr. Hitzelberger to demonstrate his ownership of an undivided interest in the oil and gas were not admissible evidence because they lacked a declaration of consideration. The circuit court included a finding in its Omnibus Order stating "there was no admissible evidence to prove that [Mr.] Hitzelberger was a bona fide purchaser of an undivided ownership interest in the oil and gas mineral parcels" and citing West Virginia Code § 11-22-7 (1961), which addresses the admissibility of documents subject to tax which do not have documentary stamp(s) affixed thereto. Mr. Hitzelberger challenges the circuit court's finding in this appeal. However, the brevity of the circuit court's finding with regard to Mr. Hitzelberger's chain of title documents precludes meaningful appellate review. We have held that "[a] circuit court order granting summary judgment must set forth sufficient findings of fact to permit meaningful appellate review." Syl. Pt. 3, in part, *Fayette County National Bank v. Lilly*, 199 W.Va. 349, 484 S.E.2d 232 (1997), *overruled on other grounds by Sostaric v. Marshall*, 234 W.Va. 449,

17

paid the tax tickets issued by the Harrison County Assessor that were generated from assessments placed on the landbooks of Harrison County that purported to be real property assessments of their undivided mineral interests. Indeed, upon payments of the tax tickets, the petitioners received receipts from the Harrison County Assessor showing "Full Year Payment Real Property."

In *Lone Pine*, it was observed that "Mr. Mitchell had no reason to seek to set aside the tax deed because he correctly believed that he had properly paid his taxes on the oil and gas interests that he inherited from his mother and aunt." *Id.* at *3. Likewise, the petitioners herein believed that they had paid the taxes on their oil and gas interests. The petitioners had no reason to know that the tax tickets they received from the Harrison County Assessor were generated from assessments based on royalty income because they each only received one tax ticket represented as a real property assessment of their individual mineral interest. With respect to Mr. Hitzelberger, the record shows that he was conveyed an undivided twenty percent interest in the oil and gas in 1998; that he filed documentation of that conveyance with the Harrison County Clerk at that time; and that his interests were continuously assessed in his name as real property. Likewise, the other petitioners and their

766 S.E.2d 396 (2014). Resolution of this issue is not determinative of the validity of MRI's tax deed. To the extent Mr. Hitzelberger's chain of title remains at issue in light of our decision, upon remand, the circuit court may conduct further proceedings as necessary to enter a final order capable of review.

18

predecessors-in-title paid the tax tickets generated by the Harrison County Assessor which were represented as real property tax assessments of their mineral interests.

In sum, the Harrison County Assessor designated the assessments of the petitioners' interests as real property and placed them on the Harrison County landbooks for more than a decade prior to the tax sale to MRI. Upon receipt of the tax tickets generated from these assessments, the petitioners paid their taxes annually and received receipts for "Full Year Payment Real Property." In fact, they continued to do so, for more than ten years, after the tax deed was issued to MRI. Critically, the petitioners' oil and gas interests are real property interests pursuant to their chain of title documents. This Court has long recognized that "[f]orfeiture of lands is a harsh, even dreadful remedy, and courts lean from it and never apply it except where the law clearly warrants." *State v. Cheney*, 45 W.Va. 478, 480, 31 S.E. 920, 920 (1898). Such a result is not warranted in this instance. Based upon all the above, we find that the circuit court erred by concluding that petitioners' ownership interests were "legitimately sold out from under them." Because of the double assessments and the payment of the taxes by the petitioners, we find that the mineral interests were never delinquent. Therefore, the sale of the subject mineral interests for delinquent taxes was void as a matter of law. See *Haynes* at *5.

19

We further find that the petitioners' claims were not barred by West Virginia Code § 11A-4-4. Pursuant to that code provision, a delinquent landowner has three years to bring an action to set aside the tax sale deed.[16] We rejected this same argument in *Haynes,* agreeing with the circuit court that:

> [Petitioner] appears to be conflating the law governing *void* tax deeds (*Allen, Low*) with the remedies available for setting aside *voidable* tax sale deeds (Section § 11A-4-1[,] *et seq*.). Voidable tax sale deeds are protected by a three-year statute of limitations for setting aside the tax sale deed by the defaulting landowner. Section 11A-4-2, 11A-4-3, 11A-4-4. In contrast, tax sale deeds that are the result of duplicate assessments are void ab initio and cannot be "saved" by a statute of limitations that never applied in the first instance. Unlike voidable tax sale deeds, void tax sale deeds do not have a statute of limitations. *MZRP, LLC v. Huntington Realty Corp*., No. 35692, 2011 WV 12455342, at *4 (W.Va. March 10, 2011) ("While W.Va. Cod[e] 11A–4–1, et seq., enacted a three-year statute of limitations on voidable deeds created by procedural irregularities, there is no statute of limitations regarding void deeds.").

*Haynes* at *5. Therefore, for the reasons set forth above, we reverse the circuit court's grant of summary judgment to MRI declaring it the owner of eighty percent of the mineral interests

---

[16]West Virginia Code § 11A-4-4(a) states, in pertinent part:

> If any person entitled to be notified under the provisions of section twenty-two [§ 11A-3-22] or fifty-five [§ 11A-3-55], article three of this chapter is not served with the notice as therein required, and does not have actual knowledge that such notice has been given to others in time to protect his interests by redeeming the property, he, his heirs and assigns, may, before the expiration of three years following the delivery of the deed, institute a civil action to set aside the deed.

20

in the subject property and remand this case for entry of an order declaring the tax deed issued to MRI void as matter of law.[17]

## B. L&D Investments's Claim Against Antero

As set forth above, L&D Investments asserted a claim against Antero for "unauthorized" pooling. The circuit court avoided resolving this issue, deeming the claim mooted by its ruling in favor of MRI with respect to ownership of the mineral interests. In light of the fact that we have reversed the circuit court's grant of summary judgment to MRI, we must also reverse the circuit court's decision regarding L&D Investments's claim against Antero and remand for further proceedings. We will not address the issue at this juncture because

> "'this Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance.' Syllabus Point 2, *Sands v. Security Trust Co.*, 143 W.Va. 522, 102 S.E.2d 733 (1958)." Syllabus Point 2, *Duquesne Light Co. v. State Tax Department*, 174 W.Va. 506, 327 S.E.2d 683 (1984), *cert. denied*, 471 U.S. 1029, 105 S.Ct. 2040, 85 L.Ed.2d 322 (1985).

Syl. Pt. 4, *State ex rel. State Line Sparkler of West Virginia v. Teach*, 187 W.Va. 271, 418 S.E.2d 585 (1992).

---

[17]Having found the tax deed issued to MRI void, petitioners' arguments with respect to MRI's alleged failure to give notice of the right to redeem are moot.

## IV. Conclusion

In accordance with the foregoing, the orders of the Circuit Court of Harrison County entered on February 21, 2017, and April 5, 2017, are reversed, and this case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.